352 A.2d 4
COMMONWEALTH of Pennsylvania ex rel.
George WALTON, Appellee,
v.
Louis AYTCH, Superintendent, Philadelphia
County Prisons, Appellant (two cases).

Supreme Court of Pennsylvania.
Argued Oct. 21, 1975.
Decided Jan. 29, 1976.
Rehearing Denied March 5, 1976.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Carolyn E. Temin, Philadelphia, for appellant.

Bashman, Deutsch & Bernstein, Stanley Bashman, Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

EAGEN, Justice.

This is an appeal by the Commonwealth from an order of the Court of Common Pleas of Philadelphia granting a petition for a writ of habeas corpus.[1]  The petition was

---

1. The jurisdiction of this Court is based on the Appellate Court Jurisdiction Act of 1970, P.L. 673, No. 223, art. II, § 202(1), 17 P. S. § 211.202(1) and art. V, § 503(c), 17 P.S. § 211.503(c).

filed following the *sua sponte* declaration of a mistrial by the trial judge in *Commonwealth v. Walton*. The court granted the petition because it determined that any attempted retrial of George Walton, relator, would constitute a violation of his Fifth Amendment right against being put twice in jeopardy since the *sua sponte* declaration of a mistrial was not justified by the circumstances and events surrounding it. We agree and therefore affirm. The pertinent facts are as follows:

Walton was brought to trial on November 27, 1974, on four counts of murder and one count of conspiracy. A jury panel of twelve jurors and two alternates was chosen on this day. The panel was then excused for Thanksgiving weekend without being sworn. Although trial was scheduled to continue on December 2, 1974, because of a motion for a continuance by the Commonwealth resulting from a last minute refusal of a witness, Leroy Brown, to testify, trial did not resume until December 3, 1974.

On December 3, 1974, defense counsel brought to the court's attention an article which had appeared in a newspaper in Philadelphia on December 2, 1974. The article stated that Brown had refused to testify and that the refusal was the reason the Commonwealth had sought a continuance. Defense counsel moved to discharge the jury but withdrew his motion and sought a precautionary instruction regarding the article. The trial judge gave the requested instruction and ascertained that no members of the panel had read the article. The jury was then sworn.

Later on the same day, the trial judge discovered another newspaper article which had been published on December 3, 1974. This article reported that the First Assistant District Attorney had accused Walton of convincing Brown not to testify. The trial court then decided to sequester the jury. The panel was questioned as to whether sequestration would constitute a hardship since the members of the panel, when originally selected, had

been informed they would not be sequestered except during deliberations.

During the questioning, one juror indicated that the sequestration would be a hardship. That juror was excused and replaced by an alternate. Later in the day, another juror had to be excused and replaced by the other alternate due to hardship. Thus, at the adjournment of trial on December 3, 1974, the jury consisted of twelve jurors and no alternates.

At 11:00 p. m. on December 3, 1974, the trial judge received a phone call from a court officer. The court officer informed the judge that one of the jurors had been unsuccessful in acquiring a baby sitter for her children. After speaking with the juror, the judge determined that she was "very, very distressed" and allowed her to attempt to reach certain neighbors to watch the children. The attempt was unsuccessful. After being informed of this, the judge allowed the juror to go home apparently without directing her to return on December 4, 1974. He did so without consulting either counsel involved.

On December 4, 1974, when the trial was to reconvene, the judge related the previous night's events and informed the parties that: "We now have eleven jurors." Defense counsel then informed the court that his client would not proceed with eleven jurors, that he was not motioning for a mistrial, and that the trial judge's actions had caused a mistrial.

Counsel for the Commonwealth then stated: (1) that defense counsel could consent to proceed with eleven jurors under Rule 1103 of the Pennsylvania Rules of Criminal Procedure; and, (2) that the juror allowed to go home the night before could be returned and an extensive colloquy could then be conducted. Defense counsel stated the juror was no longer part of the jury. The trial judge then stated that the juror had not been "specifically discharged." Counsel for the Commonwealth then expressed the opinion that sequestration was in the discre-

tion of the trial judge and it would be up to the trial judge to determine if the juror could be returned. The judge then inquired whether the juror had returned from home and learned she had not. He then conducted a colloquy with Walton, who was allowed to consult counsel, as to whether he would proceed with eleven jurors. Walton refused to do so.

Counsel for the Commonwealth then requested the return of the juror to determine: (1) the precise nature of the previous night's crisis; and (2) the state of mind of the juror and whether she discussed the case with anyone. He then requested that following such an inquiry the court rule whether the juror could be returned to the jury and whether the sequestration should continue.

The trial judge then stated that he had no doubt a crisis had existed the previous night and that he had reservations about lifting the sequestration. Defense counsel then stated he objected to the return of the juror because she might become angry with him after the extensive questioning he would like to conduct if an attempt were made to return her to the jury panel. Further, defense counsel stated the juror was tainted. The trial judge thereupon declared a mistrial formally.

The Commonwealth sought to retry Walton and he petitioned for a writ of habeas corpus. The Court of Common Pleas granted the petition.

The double jeopardy clause of the Fifth Amendment of the United States Constitution was made applicable to the states through the Fourteenth Amendment in *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L. Ed.2d 707 (1969). There is no question that under the instant facts jeopardy had attached in the first trial, but the mere fact that jeopardy had previously attached and then terminated does not prohibit another prosecution following a *sua sponte* declaration of a mistrial. Another trial is allowable where a court *sua sponte* declares a

mistrial without the defendant's consent and over his objection where "manifest necessity" justifies the declaration of the mistrial. As stated by Mr. Justice Story in *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824) ;

> "We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, Courts should be extremely careful how they interfere with any of the chances of life, in favor of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the Judges, under their oaths of office."

*United States v. Perez,* supra at 580.

The United States Supreme Court and this Court have consistently adhered to this formulation. *United States v. Jorn,* 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971); *Illinois v. Somerville,* 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973) ; *Commonwealth v. Stewart,* 456 Pa. 447, 317 A.2d 616 (1974). But before determining whether the circumstances and events presented a situation of manifest necessity, it is necessary to determine when the mistrial occurred.

The Court of Common Pleas determined that, although the trial judge formally declared a mistrial on the morning of December 4, 1974, the mistrial actually occurred

the night before when the juror was discharged. It thus examined the circumstances and events surrounding the decision to allow the juror to return home to determine if "manifest necessity" existed. The Commonwealth argues that this was incorrect because the mistrial did not occur until the trial judge formally declared it on the morning of December 4, 1974. The Commonwealth reasons that this is so because: (1) the trial could have continued if defense counsel and the defendant had agreed to return the juror who had been allowed to return home; and, (2) the trial could have continued if defense counsel and the defendant had agreed to proceed with eleven jurors as allowed by Pa.R.Crim.P. 1103. Moreover, reasons the Commonwealth, the refusal to proceed with less than twelve jurors and the objection to the return of the juror, who had returned home, was tantamount to a request for a mistrial.

First, the trial judge must have viewed his action of allowing the juror to return home as a discharge of the juror [2] because had he viewed his action as merely excusing the one juror from sequestration, he could have returned the juror over the objection of defense counsel. Thus, since the juror was discharged when she was allowed to return home, the possibility of returning her did not exist.

Second, the Commonwealth misconceives the nature of Rule 1103.[3] The rule states that the defendant *may*

---

**2.** This Court need not now determine whether a juror could be excused from sequestration for a night and then returned to duty since, as the textual discussion indicates, the trial judge must have viewed the juror as discharged.

**3.** Pa.R.Crim.P. 1103 provides:
"In all cases, except those in which a capital crime is charged, the defendant at any time before verdict may agree, with the consent of his attorney, and approval by a judge of the court in which the case is pending, to be tried by a jury of less than twelve but not less than six."
The textual analysis eliminates any need to discuss the exception in the Rule for capital offenses because even assuming the Rule is applicable, it does not support the Commonwealth's position.

agree to proceed with less than twelve jurors. The Commonwealth's position would require a ruling that the defendant *must* proceed with less than twelve jurors or waive any claim that the discharge was not manifestly necessary and thus give up his interest in having the jury as originally empaneled determine his guilt or innocence. See *United States v. Jorn*, supra. Such a ruling is unacceptable for two reasons: (1) it is contrary to the clear and unambiguous language of Rule 1103, see Pa.R. Crim.P. 2, 1 C.P.S.A. § 1921(b); and (2) it would require a defendant to give up his interest in having the jury as originally empaneled determine his guilt or innocence and thus improperly abridge a substantive right of a defendant, see Pa.Const. art. 5, § 10(c).

The clear language of Rule 1103 grants a defendant, subject to the supervision of the court, an option of proceeding with less than twelve jurors. Thus, after the dismissal of a juror over objection, if the defendant and his counsel still believe the juror was improperly discharged, the defendant may refuse to proceed with less than twelve and thereby require the court to formally declare the mistrial. The attempt to retry would then ripen the issue of whether the discharge was manifestly necessary and thus the double jeopardy issue would be properly raised. If the defendant and his counsel believe circumstances of manifest necessity existed despite his objection, the defendant may agree to proceed with less than twelve or consent to the formal declaration of a mistrial, thus waiving the double jeopardy claim because he does not think his interest in the jury as originally empaneled has been improperly denied.

Under the Commonwealth's asserted analysis of the Rule, double jeopardy could never be raised after the improper dismissal of a juror and subsequent attempt to retry because the failure to proceed with less than twelve jurors would be viewed as a waiver of the double jeopardy claim. As noted, this analysis is contrary to the ex-

press language of Rule 1103 and would abridge a defendant's substantive right.

Since Walton did not have to proceed with eleven jurors and since the other juror could not be returned as of the time of her discharge, that is, when she was sent home, the trial was aborted when the juror was sent home. Thus, since the discharge terminated the trial, the circumstances and events surounding the juror's discharge are those which must be examined to determine if the termination or mistrial was manifestly necessary.

In applying the *Perez* doctrine of manifest necessity, this Court has previously stated that:

". . . the pivotal question . . . [is] whether the trial court properly exercised its discretion in finding that either manifest necessity *or* the ends of public justice required the declaration of a mistrial.

"In accordance with the scope of our review, we must take into consideration *all* the circumstances when passing upon the propriety of a declaration of mistrial by the trial court. The determination by a trial court to declare a mistrial after jeopardy has attached is not one to be lightly undertaken, since the defendant has substantial interest in having his fate determined by the jury first impaneled. *United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971)." [Emphasis in original.]

*Commonwealth v. Stewart*, supra at 451–52, 317 A.2d at 618. Moreover,

"In determining whether a trial judge abused his discretion in granting a mistrial, the Supreme Court . . . rather than establishing any clear-cut rules for when a mistrial should be granted, simply reiterated the standard of 'manifest necessity' . . . and offered the following caveat: " '. . . in the final analysis, the judge must always temper the decision whether or not to abort the trial by considering the

importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate.' "

*Commonwealth v. Ferguson*, 446 Pa. 24, 29, 285 A.2d 189, 191 (1971).

Furthermore,

" 'We resolve any doubt "in favor of the liberty of the citizen, rather than exercise what would be an unlimited, uncertain, and arbitrary judicial discretion." ' "

*Commonwealth v. Shaffer*, 447 Pa. 91, 98, 288 A.2d 727, 732 (1972), quoting from *Downum v. United States*, 372 U.S. 734, 736, 83 S.Ct. 1033, 1034, 10 L.Ed.2d 100 (1963).

In examining the circumstances and events surrounding the discharge of the juror, we do not think the necessity for the trial judge's action is clearly manifest such that the propriety of the declaration of the mistrial is free from doubt.

The trial court could have at last attempted to contact both attorneys involved in the case to ascertain if they had any suggestions. In order to properly exercise his discretion, the trial judge should have sought out such suggestions, particularly those of defense counsel, in order to indicate that the determination was tempered by a consideration of Walton's interest.

The court in its opinion granting the petition for the writ of habeas corpus listed various suggestions which might have been brought to the attention of the trial judge by either attorney to avoid the mistrial. Among the court's suggestions were: (1) sending a court officer with the juror to maintain the sequestration, or (2) lifting the sequestration, in accord with the trial judge's power pursuant to Pa.R.Crim.P. 1111(c). While these suggestions may not have been acceptable to the trial judge, and while both attorneys involved may not have

had any suggestions, and while neither attorney may have been available, the exercise of discretion is tainted by the trial judge's failure to attempt to contact them before discharging the juror. Even though the same decision may have resulted and even though the same decision might have here been upheld as manifestly necessary had the attempt been made, the failure to make any attempt to contact counsel creates a doubt as to the propriety of the exercise of discretion because it does not indicate a consideration of Walton's interest was made.[4]

Thus, because of the failure to attempt to contact either attorney, that is, a failure to indicate a consideration of Walton's interest, whether the mistrial was manifestly necessary is subject to doubt. It follows that a retrial is prohibited by the Fifth Amendment because the necessity of the mistrial is not clearly manifested under all the circumstances. *Commonwealth v. Shaffer,* supra.[5]

4. The Commonwealth argues that the newspaper articles caused the mistrial and that, viewed as a whole, the series of determinations by the trial judge were designed to avoid a mistrial and that he declared a mistrial because his other attempts to avoid it failed and therefore, viewed in this light, the mistrial had become absolutely necessary since all the other reasonable alternatives to avoid a mistrial had been pursued. We fail to see how the previous determinations made by the trial judge can remove the taint of an improper exercise of discretion at the time the juror was dismissed under the instant facts.

5. We need not examine the events and circumstances surrounding the declaration of the mistrial in relation to "the ends of justice." *United States v. Perez,* supra 22 U.S. at 580. "The ends of public justice" or, more precisely, " 'the public's interest in fair trials designed to end in just judgments,' " *Illinois v. Somerville,* supra 410 U.S. at 463, 93 S.Ct. at 1070, quoting from *Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974, is a consideration which is made wherein a prejudicial element is injected or discovered at trial, such that, a mistrial serves to eliminate the prejudicial element and foster a just judgment. See generally, *Commonwealth v. Robson,* 461 Pa. 615, 337 A.2d 573 (1975); *Commonwealth v. Stewart,* supra; *Commonwealth v. Shaffer,* supra. This case does not involve the injection or discovery of a prejudicial element.

The order of the Court of Common Pleas granting the petition for a writ of habeas corpus is therefore affirmed.

ROBERTS, J., concurs in the result.

POMEROY, J., filed a dissenting opinion in which NIX, J., joins.

POMEROY, Justice (dissenting).

I am unable to agree with the majority that the trial judge abused his discretion in discharging the twelfth juror.*

In its consideration of whether "manifest necessity" existed for her discharge, the Court properly uses the test expounded long ago by the Supreme Court of the United States in *U. S. v. Perez,* 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824), and followed by this Court, see *e. g. Com. v. Stewart,* 456 Pa. 447, 317 A.2d 616 (1974) and Pa.R.Cr.P. 1118, 19 P.S. (Special Pamphlet), for determining whether a mistrial was properly declared *sua sponte.* I, of course, have no quarrel with the standard employed by the Court. My difference with the majority is in the interpretation and application of that standard to the facts of this case.

## I

The Court affirms the order of the court of common pleas because in its view, "[i]n examining the circumstances and events surrounding the discharge of the juror, we do not think the necessity for the trial judge's action is clearly manifest such that the propriety of the

---

* The court below concluded that the mistrial was declared when that juror was discharged, and allowed to go home, and not on the following morning. This conclusion, which the majority now accepts, is at least subject to some doubt in light of the simple fact that the judge upon ordering the discharge of this one juror did not release all of the others from sequestration at the same time.

declaration of the mistrial is *free from doubt.*" Opinion, *ante,* at 8 (emphases added). If the Court intends to say that the trial judge's action, in order to come within the *Perez* rubric, must be free of *all* doubt, I believe that the Court is interpreting that standard much too narrowly.

In determining guilt, we require only that the fact-finder be convinced "beyond a reasonable doubt" before it may return a verdict of conviction. We do not require certitude beyond all doubt even for that most grave decision. Surely in determining whether a judge abused his discretion in declaring a mistrial we are not to employ a standard higher than that required for ascertaining guilt.

The Supreme Court of the United States in *Gori v. U. S.,* 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961), stressed the great breadth of the trial judge's discretion in situations of this sort:

"Where, for reasons deemed compelling by the trial judge, who is best situated intelligently to make such a decision, the ends of substantial justice cannot be attained without discontinuing the trial, a mistrial may be declared without the defendant's consent and even over his objection, and he may be retried consistently with the Fifth Amendment." *Id.* at 368, 81 S.Ct. at 1526, 6 L.Ed.2d at 901.

See also *Illinois v. Somerville,* 410 U.S. 458, 462, 93 S.Ct. 1066, 35 L.Ed.2d 425, 430 (1973). Clearly with such discretion reposing in the trial judge, it was not intended that he be so circumscribed as to be able to act only when free of all doubt. The cases are plain that a court may declare a mistrial if "manifest" necessity exists. The majority today, in my view, would read "manifest" to mean "absolute." The trial courts' discretion is thus reduced to virtual nothingness.

## II

The Court does not, nor could it, question the trial court's finding that the twelfth juror was "very, very distressed" at the time she was excused from the jury panel. The principal vice, in the Court's view, in the trial court's decision to discharge her was the failure "to contact both attorneys involved in the case to ascertain if they had any suggestions." *Id.* This fact, to the Court, indicates the absence of any showing that the exercise of the trial judge's was "tempered by a consideration of Walton's interest." *Id.* While I agree that it would have been preferable for the judge to consult with counsel for the parties at the time the crisis arose, I do not agree that failure to do so justifies the conclusion that the defendant's interest was lost sight of.

The Court's reason for requiring consultation with counsel is the belief that counsel would have provided the trial judge with possible alternatives to discharge, such as sending a court officer with the juror or lifting the sequestration order. The Court does not hold that the trial court was bound to follow one of these possible alternatives. What apparently is important to the Court is not that one of these alternatives must be followed, but that there be some evidence that they were considered. Indeed, the Court's opinion concedes that "the same decision might have here been upheld as manifestly necessary had the attempt [to contact counsel and solicit alternatives] been made." Opinion, *ante* at 8–9. The Court is thus finding fault not with the trial court's decision, but his manner of deciding. I question whether this is our proper role, but even if it were, I believe the Court has overlooked a vital part of the record which does provide some evidence that the court considered and rejected possible alternatives.

While it is true that the trial judge did not seek the advice of counsel at the time he discharged the juror in

question, the record reflects that the trial judge did receive and consider one of the alternatives now suggested in connection with the discharge of one of the jurors excused earlier in the day. The prosecutor, in order to avoid losing a juror who claimed he was needed at home to care for his incapacitated parents, suggested to the court that rather than discharging the juror, he be sent home with a court officer or sheriff to make sure he remained sequestered. The court rejected that alternative: "I am going to excuse him because I want him to concentrate on this case. I do not want to separate the jury. The risks are too great in a situation like that."

The judge's remarks indicate to me that his principal concern in discharging that juror (and inferentially the twelfth juror, since the reasons for their discharge were similar) was to insure that the jury which tried the defendant was uninfluenced by outside sources of concern or information. What Mr. Chief Justice Jones stated in *Com. v. Stewart, supra* is equally applicable here:

"The trial court was insuring that appellant would receive a trial by a fair and impartial jury which would return a verdict based solely on evidence adduced at trial. This is an interest which is to be protected not only for defendants, but also for the public, which has a compelling interest in justice for all. See *Gori v. U. S.*, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961); *Thompson v. U. S.*, 155 U.S. 271, 15 S.Ct. 73, 39 L.Ed. 146 (1894); *Simmons v. U. S.*, 142 U.S. 148, 12 S.Ct. 171, 35 L.Ed. 968 (1891)." 456 Pa. at 453, 317 A.2d at 619 (footnote omitted).

The fact that alternatives to discharge were available does not mean that the trial judge abused his discretion in discharging the juror and aborting the trial. *Com. v. Monte*, 459 Pa. 495, 329 A.2d 836, 840–41 (1974). The crucial question, to my mind, is whether the trial judge reasonably concluded that the juror could no longer continue as a juror because of her emotional state. He

alone was best suited to make that determination and I find nothing in the record to indicate he was in error. See *Gori v. U. S.*, supra; see also *U. S. v. Holland*, 378 F.Supp. 144 (E.D.Pa.1974), affirmed, sub nom. *U. S. v. Murphy*, 506 F.2d 1053 (3d Cir. 1974), *cert. denied, Ehly v. United States*, 420 U.S. 994, 95 S.Ct. 1433, 43 L.Ed.2d 676 (1974); Annot., 53 ALR 1062.

I would reverse the order granting appellee habeas corpus relief and remand the case for a new trial.

NIX, J., joins in this dissenting opinion.