567 A.2d 656

**COMMONWEALTH of Pennsylvania**

v.

**Charles COOPER, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 14, 1989.

Filed Oct. 12, 1989.

Reargument Denied Dec. 26, 1989.

John W. Packel, Asst. Public Defender, Philadelphia, for appellant.

Donna G. Zucker, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before OLSZEWSKI, MONTEMURO and HOFFMAN, JJ.

HOFFMAN, Judge:

This is an appeal from the order of the Common Pleas Court that overturned a Municipal Court ruling that appellant's retrial was barred by principles of double jeopardy. Appellant contends that retrial would violate his right against double jeopardy because, at his first trial, the municipal court *sua sponte* declared a mistrial in the absence of manifest necessity. For the reasons that follow, we agree and, accordingly, we reverse the order below and order appellant discharged.

Appellant was charged with driving under the influence, in violation of 75 Pa.C.S.A. § 3731. On June 19, 1987, appellant appeared before Philadelphia Municipal Court Judge William Brady, and pled not guilty. Appellant then proceeded to a bench trial, where at the close of evidence, Judge Brady announced a verdict of guilty. Defense counsel informed the judge that he had not had an opportunity to argue. During counsel's summation, a dispute arose concerning the legal effect of a breathalyzer reading over 0.10. Judge Brady believed he had misunderstood the appropriate standard of law and then declared a mistrial *sua sponte*. The Commonwealth objected to the declaring of the mistrial but the court overruled the objection and proceeded to set a date for a new trial. Prior to the second municipal court trial, appellant's counsel filed a motion asking that the second trial be barred on double jeopardy grounds. On June 30, 1987, Philadelphia Municipal Court Judge Barbara Gilbert granted appellant's motion. The Commonwealth appealed to the Common Pleas Court which reversed, and ordered the case be sent for trial. This appeal followed.

Appellant contends that he cannot be tried again consistent with the federal and state constitutional guarantees against double jeopardy.[1] We agree.

The Fifth Amendment's prohibition against placing a defendant 'twice in jeopardy' represents a constitutional policy of finality for the defendant's benefit in ... criminal proceedings. A power in government to subject the individual to repeated prosecutions for the same offense would cut deeply into the framework of procedural protection which the Constitution establishes for the conduct of a criminal trial.

*United States v. Jorn,* 400 U.S. 470, 479, 91 S.Ct. 547, 554, 27 L.Ed.2d 543 (1971) (plurality opinion); *Commonwealth v. Shaffer,* 447 Pa. 91, 288 A.2d 727, *cert. denied Shaffer v. Pennsylvania,* 409 U.S. 867, 93 S.Ct. 164, 34 L.Ed.2d 116 (1972). In *United States v. Perez,* 9 Wheat. 579, 6 L.Ed.

1. U.S. Const.amend. V; Pa.Const. art. 1, § 10.

165 (1824), JUSTICE STORY first articulated the standard for determining whether a retrial, following a declaration of a mistrial, without the defendant's request or consent, constitutes double jeopardy:

> We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and in capital cases especially, Courts should be extremely careful how they interfere with any of the chances of life, in favour of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the Judges under their oaths of office.

*Id.* at 580, 6 L.Ed. at 165. The United States and Pennsylvania Supreme Courts consistently have adhered to this formulation and have refused to apply a mechanical formula in determining whether a retrial would violate the Double Jeopardy Clause. *See United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976); *Illinois v. Somerville,* 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973); *Commonwealth v. Bartolomucci,* 468 Pa. 338, 362 A.2d 234 (1976); *Commonwealth ex rel. Walton v. Aytch,* 466 Pa. 172, 352 A.2d 4 (1976). As our Supreme Court has noted, "[n]o rigid rule for determining what constitutes 'manifest necessity' for a mistrial has been established." *Commonwealth v. Robson,* 461 Pa. 615, 622, 337 A.2d 573, 576 (1975). Rather, "[e]ach case must turn on its facts." *Downum v. United States,* 372 U.S. 734, 737, 83 S.Ct. 1033, 1035, 10 L.Ed.2d 100 (1963). Nonetheless, courts have

stressed the critical nature of the trial court's decision whether or not to declare a mistrial *sua sponte*, and have insisted that the decision not be made lightly. Thus, in *United States v. Jorn, supra,* JUSTICE HARLAN wrote that:

[T]he *Perez* doctrine of manifest necessity stands as a command to trial judges not to foreclose the defendant's option [to have his trial completed by a particular tribunal] until a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings.

400 U.S. at 485, 91 S.Ct. at 557; *see also Commonwealth ex rel. Walton v. Aytch, supra; Commonwealth v. Stewart,* 456 Pa. 447, 317 A.2d 616 (1974). Moreover, in *Downum v. United States, supra,* the Court emphasized that in determining whether a mistrial was properly declared "[w]e resolve any doubt 'in favor of the liberty of the citizen, rather than exercise what would be an unlimited, uncertain, and arbitrary judicial discretion.' " 372 U.S. at 738, 83 S.Ct. at 1035 (quoting *United States v. Watson,* 28 F.Cas. 499, 501 (S.D.N.Y.1868) (No. 16651)). Similarly, if there is any doubt as to the existence of *manifest necessity,* the doubt must be resolved in favor of the defendant. *Commonwealth v. Gains,* 383 Pa.Super. 208, 219, 556 A.2d 870, 876 (1989); *Commonwealth v. Adams,* 349 Pa.Super. 200, 214, 502 A.2d 1345, 1353 (1986); *see also Commonwealth v. Bycer,* 485 Pa. 224, 401 A.2d 740 (1979); *Commonwealth v. Shaffer, supra.* Finally, we note that it is settled that before declaring a mistrial *sua sponte,* a trial court should consider whether there are any other less drastic alternatives; declaring a mistrial without considering those alternatives alone may be grounds for barring retrial. *United States v. Jorn, supra; Commonwealth ex rel. Walton v. Aytch, supra; Commonwealth v. Ferguson,* 446 Pa. 24, 285 A.2d 189 (1971); *Commonwealth v. Bradley,* 311 Pa. Super. 330, 457 A.2d 911 (1983); *Commonwealth v. Dull,* 257 Pa.Super. 192, 390 A.2d 777 (1978).

■ With these principles in mind, we turn to an examination of the instant case. After the court heard argument in appellant's bench trial, it *sua sponte* declared a mistrial because there was confusion over the effect of a breathalyzer test in driving under the influence cases. The confusion was reflected in the following exchange:

Mr. Penneys [appellant's counsel]: Defense rests, Your Honor.

The Court: All right, gentlemen, under all the evidence the Court has heard in this matter and the inferences therefrom, Court must adjudge Mr. Cooper guilty of driving under the influence here. And for purposes of our sentencing, Mr. Cooper, August the 5th, Room 916 the sentencing will take place.

Mr. Penneys: I was going to make some argument before you found him guilty.

The Court: Please do.

    \*    \*    \*    \*    \*    \*

Mr. Penneys: The problem with that, he said he was not drinking that day, that he might have been drinking the night before. That 1.4 [result of breathalyzer test] is only a presumption, not an absolute requirement that he's intoxicated.

The Court: 0.14?

Mr. Penneys: Right.

The Court: Not absolute? Is that right?

Mr. Dworakowski [for the Commonwealth]: It's a presumption. It's not conclusive.

The Court: I'm thinking this is over 010.

Mr. Dworakowski: It is.

Mr. Penneys: Over that there's a presumption. In order to be conclusive, there would have to be a mandatory statute. Only raises the presumption that he's intoxicated. You have to look at other things to see whether or not, in fact, he was. All the other things the officer indicated to you, slurred speech, inability to understand him, that's exactly the same way he was today on the

stand. Hard to understand. Couldn't understand us some of the time.

The Court: What do we consider 05 to 1.0? That is also a presumption? We've had cases where its 08 and the cases have held there have been convictions for that.

Mr. Dworakowski: That's correct.

The Court: What would that be? When you talk about presumption, after 10, 0.10, isn't that more than presumption?

Mr. Penneys: No still a presumption. Not absolute mandatory statute. Court at that point can presume he's intoxicated unless you see reasons to believe that he's not. And I believe what you've done here, the Commonwealth has presented other witness—obviously if they just said he had 14 and rested, then you couldn't find him guilty.

The Court: Repeat that last one thing.

Mr. Penneys: If the Commonwealth put the officer on and the officer said defendant was driving the car, then they put on the breathalyzer and say .14, you couldn't find him guilty.

The Court: You agree with that?

Mr. Dworakowski: Yes, Your Honor.

The Court: All right, I'll recuse myself and give him a new trial.

Mr. Dworakowski: Judge, we have more than just a breathalyzer here. We have an overwhelming amount of evidence here to find this defendant guilty. We have the breathalyzer which does raise presumption, but we have an enormous amount of evidence. We have the officer testifying defendant was staggering. We have the officer testifying defendant had a strong odor of alcohol on his breath. Officer testified that his eyes were bloodshot.

The Court: Well, the Court took the position it was 0132, 0141, that that standing alone I was satisfied, my finding was on the basis of that alone is enough to convict him.

Mr. Dworakowski: But prior to finding him guilty, he hasn't been adjudicated guilty yet because Mr. Penneys had opportunity to make argument.

The Court: I'm going to recuse myself. At any rate, we'll give it a date.

The Crier: Are you declaring a mistrial, Your Honor?

Mr. Dworakowski: Respectfully, no reason for His Honor to recuse himself because there's been no finding of guilty yet.

The Court: Well, I did find him guilty and after argument and after the situation, I'm satisfied that I'm going to give it a new date. Court declares a mistrial, and give Mr. Cooper a new date.

N.T. June 19, 1987 at 23–28. Because appellant did not request the mistrial or consent to it, the only question we need resolve is whether the mistrial declared by the court was justified by "manifest necessity." [2,3]

Although there is no set test for determining when manifest necessity exists, Pennsylvania courts have recognized certain factors that are relevant in establishing its existence. For example, the courts have held that manifest necessity for a mistrial exists when the judge becomes very ill, *see Commonwealth v. Robson, supra,* when jurors

---

**2.** The Commonwealth argues that it is unnecessary to determine if manifest necessity existed because appellant waived his right to allege double jeopardy by not objecting to the judge's *sua sponte* declaration of a mistrial. We disagree. Our Supreme Court has stated that:
   "[M]ere silence by [a] defendant or his counsel to the proposed discharge of the jury by the trial Judge will not amount to waiver of this very important constitutional right of every person...."
*Commonwealth v. Bartolomucci,* 468 Pa. 338, 347, 362 A.2d 234, 239 (1976) (quoting *Commonwealth v. Baker,* 413 Pa. 105, 115, 196 A.2d 382, 387 (1964)); *see also Commonwealth v. Brooks,* 225 Pa.Super. 247, 250, 310 A.2d 338, 339 (1973). In light of these cases, we cannot hold that appellant's silence constituted a waiver of his double jeopardy rights.

**3.** Because the court heard evidence at appellant's first trial there is no question that jeopardy attached. *See Commonwealth v. Fooks,* 345 Pa.Super. 145, 149, 497 A.2d 1346, 1348 (1985) ("In Pennsylvania, the prohibition of double jeopardy attaches in a non-jury situation when the court has begun to hear evidence."); *see also Commonwealth v. Arelt,* 308 Pa.Super. 236, 241, 454 A.2d 108, 111 (1982).

become ill, *see Commonwealth v. Brown,* 451 Pa. 395, 301 A.2d 876 (1973); *see also Commonwealth v. Hamilton,* 460 Pa. 686, 334 A.2d 588 (1975), and when the jury is unable to reach a decision after appropriate time for deliberation, *see Commonwealth v. Smith,* 324 Pa.Super. 156, 471 A.2d 510 (1984). Conversely, manifest necessity has been found not to exist when the judge who was sitting as fact-finder in a non-jury trial is unwilling to decide issues of credibility, *see Commonwealth v. Culpepper,* 221 Pa.Super. 472, 293 A.2d 122 (1972), when the prosecution makes improper prejudicial comments, *see Commonwealth v. Shaffer, supra,* and where a co-defendant threatens the complaining witness, *see Commonwealth v. Hatten,* 344 Pa.Super. 362, 496 A.2d 837 (1985). From these cases, it would appear that a trial court's decision to declare a mistrial *sua sponte* is most likely to be upheld when an impediment to trial arises, that is the fault of neither party, and the impediment cannot be cured by a simple procedure or process. *See generally,* 3 W. LaFave, *Criminal Procedure,* § 24.2(b), at 70 & nn. 15–52.

Here, after carefully reviewing the record, we are constrained to conclude that the Municipal Court abused its discretion in declaring a mistrial. The difficulty in the case at bar is that there is no indication that the Municipal Court considered any less drastic alternatives before declaring the mistrial. As the trial excerpt reveals, during summation there was a disagreement between the court and counsel over the legal effect of blood alcohol test results of 0.132 or 0.14.[4] Rather than attempting to resolve the dispute the

---

**4.** Judge Brady was correct in his initial interpretation of the law. The Motor Vehicle Code provides in relevant part:

A person shall not drive, operate or be in actual physical control of the movement of any vehicle while: * * * the amount of alcohol by weight in the blood of the person is 0.10% or greater.

75 Pa.C.S.A. § 3731(a)(4). Thus, under the statute, a blood alcohol reading of 0.10 or above is sufficient to convict. It appears that both counsel for the defendant and the prosecuting attorney confused the significance of the *admissibility* of the breathalyzer test, 75 Pa.C.S.A. § 1547(d), with its effect in the definition section for driving under

court simply declared a mistrial. The court did not explain its decision to declare a mistrial rather than pursue less drastic alternatives. And, it is apparent that less drastic alternatives were available. For example, if the court disagreed with the parties' characterization of the legal effect of the breathalyzer results, it could have delayed the verdict, and either examined the relevant sections of the Motor Vehicle Code, or directed the parties to brief the question. Conversely, if counsels' mistaken argument convinced the court, it could have re-examined the evidence in light of the erroneous standard, and announced a verdict.[5] We are aware that the confusion in this case resulted from counsels' misstatement of the law regarding the legal effect of a blood alcohol level of 0.132 or 0.14, and we certainly do not condone counsels' inaccurate representation of the law. Nevertheless, we must remain mindful that when there is doubt as to the existence of manifest necessity, the doubt must be resolved in favor of the defendant. *See Downum v. United States, supra; Commonwealth v. Bycer, supra; Commonwealth v. Shaffer, supra; Commonwealth v. Gains, supra; Commonwealth v. Adams, supra.* Here, because it is not apparent that the trial court considered any alternatives prior to declaring a mistrial, we must conclude that the municipal court abused its discretion. *See United States v. Jorn, supra; Commonwealth ex rel. Walton v. Aytch, supra; Commonwealth v. Ferguson, supra; Commonwealth v. Bradley, supra; Commonwealth v. Dull, supra.* Therefore, we hold that the Common Pleas court erred in concluding that the *sua sponte* declaration of a mistrial was justified by manifest necessity.

the influence, 75 Pa.C.S.A. § 3731. Section 1547 provides in relevant part:

> If chemical testing of a person's breath, blood or urine shows: * * * [t]hat the amount of alcohol by weight in the blood of the person tested is 0.10% or more, this fact may be introduced into evidence if the person is charged with violating 3731.

Id. at § 1547(d)(3).

5. We note that if the court chose this course, appellant would not have been prejudiced because he could have appealed for a trial de novo or petitioned for certiorari review. *See* Pa.R.Crim.P. 6006.

Accordingly, we reverse the order below and order appellant discharged.

Order reversed. Appellant discharged.