**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Harry LEISTER, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 5, 1998.

Filed May 21, 1998.

**334**

John W. Packel, Assistant Public Defender, Philadelphia, for appellant.

Peter J. Gardner, Assistant District Attorney, Philadelphia, for Com., appellee.

Before POPOVICH, STEVENS and MONTEMURO*, JJ.

STEVENS, Judge:

This is an appeal from the order of the Court of Common Pleas of Philadelphia County denying Appellant's motion to bar retrial on double jeopardy grounds. Herein, Appellant contends that the trial judge improperly declared a mistrial *sua sponte* without "manifest necessity," and, therefore, that the trial judge's actions constituted judicial misconduct preventing Appellant's retrial. We affirm.

The facts in this case are undisputed. On July 9, 1996, Appellant proceeded to a bench trial on the charges of corrupting the morals of a minor,[1] indecent assault,[2] making terroristic threats,[3] intimidating a witness,[4] and retaliation against a witness.[5] During a competency hearing to determine the testimonial fitness of the six-year-old alleged victim as well as during the child's subsequent testimony, defense counsel employed abusive trial tactics. While standing only several feet from the child witness, defense counsel objected to the presence of the witness' child advocate, accused the Commonwealth of coaching the witness, repeated questions that the witness could not answer, called the witness incompetent, and quarreled with opposing counsel. The result of counsel's tactics

was an intimidated child witness, unable to further testify.

The trial judge called a recess, excused the witness, and sternly reprimanded both counsel for arguing before the child. The judge then instructed both to refrain from such displays for the remainder of the trial. Rather than accept these instructions, defense counsel chose, instead, to challenge the trial judge's narration of events.[6]

Tolerant at first, the trial judge grew increasingly irate, until, finally, he denounced the proceedings as futile. In addition, the trial judge claimed to suffer abuse by defense counsel. Admitting that he had adopted a personal, condemnatory opinion of the entire defense approach and strategy, the trial judge recused himself and declared a mistrial *sua sponte*.

Before a new trial began, Appellant moved to bar retrial, relying on the double jeopardy provisions of both the Federal and State Constitutions. Though jeopardy had attached before the trial judge recused himself, *See Commonwealth v. Culpepper*, 221 Pa.Super. 472, 293 A.2d 122, 123 (1972) (jeopardy attaches in a case without a jury when the accused has been subjected to a charge and the court has begun to hear evidence), the lower court denied the motion. The trial judge found the mistrial issue within an exception to the double jeopardy prohibition, and held that the need for recusal was manifestly necessary. Lower Court Opinion, 6/27/97. This appeal followed.

 It is within the trial judge's discretion to declare a mistrial, and, absent an abuse of that discretion, no reversal of its exercise will result. *Commonwealth v. Gains*, 383 Pa.Super. 208, 556 A.2d 870 (1989). Nonetheless, a judge may declare a mistrial *sua sponte* only when manifestly necessary or where the ends of public justice

---

* Retired Justice assigned to Superior Court.

1. 18 Pa.C.S. § 6301.

2. 18 Pa.C.S. § 3126.

3. 18 Pa.C.S. § 2706.

4. 18 Pa.C.S. § 4952.

5. 18 Pa.C.S. § 4952.

6. Contrary to the conclusion reached in the dissent, there is nothing in the record to indicate that defense counsel was merely seeking instruction from the court when the court interrupted counsel and declared a mistrial.

would otherwise be defeated. *United States v. Perez,* 9 Wheat. (22 U.S.) 579, 6 L.Ed. 165 (1824); *Commonwealth v. Balog,* 395 Pa.Super. 158, 576 A.2d 1092, 1094 (1990). Where there is "manifest necessity" for a trial judge to declare a mistrial *sua sponte,* neither the Fifth Amendment to the United States Constitution nor Article I, § 10 of the Pennsylvania Constitution will bar retrial. *Commonwealth, ex. rel. Walton v. Aytch,* 466 Pa. 172, 352 A.2d 4 (1976). However, any doubt about the manifest necessity of declaring a mistrial must be resolved in the defendant's favor. *Commonwealth v. Diehl,* 532 Pa. 214, 217, 615 A.2d 690, 691 (1992).

Reviewing courts use no mechanical formula in determining whether a trial court had a manifest need to declare a mistrial. *Balog,* 576 A.2d at 1095. Rather, "...varying and often unique situations aris[e] during the course of a criminal trial...[and] the broad discretion reserved to the trial judge in such circumstances has been consistently reiterated...." *Illinois v. Somerville,* 410 U.S. 458, 462, 93 S.Ct. 1066, 1069, 35 L.Ed.2d 425 (1973). Far more conversant with the factors relevant to the determination than any reviewing court can possibly be, the trial judge, who is the foremost authority in his or her courtroom, is usually best-positioned to determine the necessity of recusal in any individual case. *Wade v. Hunter,* 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (1949); *In Interest of Morrow,* 400 Pa.Super. 339, 583 A.2d 816, 818 (1990). This principle assumes great weight when the issue involves how the presentation of evidence or the conduct of parties affects a trial's fact-finder. *See Arizona v. Washington,* 434 U.S. 497, 514, 98 S.Ct. 824, 834–35, 54 L.Ed.2d 717 (1978); *Commonwealth v. Smith,* 321 Pa.Super. 51, 467 A.2d 888, 891 (1983).

When judges doubt their own ability to adjudicate impartially, they should recuse themselves. *Commonwealth v. Boyle,* 498 Pa. 486, 490, 447 A.2d 250, 252 (1982); *In Interest of Morrow,* 583 A.2d at 819. Such an inability to be objective creates a manifest necessity for the declaration of a mistrial,

particularly when a judge must exert the broad discretion that a bench trial demands. *Smith, supra. See also Commonwealth v. Berrigan,* 369 Pa.Super. 145, 535 A.2d 91 (1987) (holding that while a judge need not have declared a mistrial where his bias never infected the jury, necessity required his recusal during sentencing to allow "one without hint of animosity toward appellant" to exercise such "largely unfettered ... discretion."). *Id.* 535 A.2d at 104.

The record here leads this Court to conclude that during Appellant's bench trial, the presiding judge, reacting to what he perceived as a continuing defense tactic of procedural abuse and witness intimidation, doubted his own ability to preside fairly and effectively and thus recused himself. Specifically, the judge articulated his concerns about his ability to remain impartial when he stated "we are not getting anywhere, and I don't like the things that you are doing here .... When you do something like that, I don't like it here. I'm not going to put up with it .... You abused the court today .... This is a big mistake," N.T. 7/9/96 pp. 31–32. Given the factual basis before the judge, we cannot doubt the sincerity of this judicial response.[7]

Even though the trial judge's decision to declare a mistrial under these circumstances is entitled to great deference, *See Arizona,* 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978), our inquiry does not end there. A judge must still exercise "sound discretion" in declaring a mistrial by considering those factors contributing to the trial problem as well as possible remedies less drastic than a mistrial. *Diehl,* 532 Pa. at 217, 615 A.2d at 691. Indeed, it is when the "... judge acts for reasons completely unrelated to the trial problem which purports to be the basis for the mistrial ruling [that] close appellate scrutiny is appropriate." *Arizona,* 434 U.S. at 510 n. 28, 98 S.Ct. at 832–33 n. 28, 54 L.Ed.2d 717. Appellant argues that the trial judge abandoned the requisite exercise of sound discretion by declaring a

---

7. The record clearly shows confrontation between the judge and defense counsel in this emotionally charged case, especially defense counsel's election to debate the judge following judicial instructions.

mistrial rather than by attempting to defuse matters with a recess. We disagree.

■ Appellant misconstrues the manifest necessity standard to require the judge to choose, whenever practicable, an alternative less drastic than recusal. However, "manifest necessity" does not require proof that a mistrial was the only option facing a judge. Rather, the United States Supreme Court has indicated that reviewing courts should not assign a strict, literal definition to the term "necessity." Instead, the courts should simply insist that a trial judge first consider less drastic options before declaring a mistrial. *Arizona*, 434 U.S. at 511, 98 S.Ct. at 833, 54 L.Ed.2d 717. Where the record reveals such consideration, the trial judge allays any fear that he failed to appreciate the gravity of a defendant's valued right to have his fate determined in one tribunal. *See United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971); *Arizona, supra.*

■ In the within case, the trial judge not only considered less drastic measures, but also exhausted those measures in attempting to adjudicate fairly. Indeed, before recusal, the trial judge called the tumultuous proceeding to recess and allowed a shaken child witness time to collect herself. The trial judge could have considered recusal at that point in the proceedings, but he favored, instead, the temperate route of admonishment and instruction. Only after the failure of less drastic measures did the trial judge turn to mistrial as a solution.

Moreover, the trial judge allayed any fear that he failed to consider Appellant's interest in standing trial in one tribunal when he acknowledged, on the record, that Appellant would "suffer the consequences" of defense counsel's abusive tactics. N.T. 7/9/96 p. 32. Thus, the significance of a mistrial to Appellant was apparent to the trial judge and obviously factored into his decision. Therefore, we are convinced that the trial judge exercised "sound discretion" before acting in this matter.

Finally, we note that the Pennsylvania Supreme Court has held that animosity, standing alone, between a lawyer and a judge is irrelevant to a recusal issue. *Reilly by Reilly v. Southeastern Pa. Transp.*, 507 Pa. 204, 489 A.2d 1291 (1985). However, unlike the circumstances in *Reilly*, the animosity in this case developed during Appellant's own case rather than in an unrelated case, was directed at the entire defense strategy rather than merely at the defense counsel, and was candidly admitted by the trial judge. The within case, therefore, is distinguishable from *Reilly*.

■ Accordingly, we find that the trial judge neither abused his discretion nor made an error of law in declaring a mistrial *sua sponte*. There was manifest necessity permitting the trial judge to so act, and Appellant's right to avoid double jeopardy was not violated. Accordingly, we affirm.

. Affirmed.

Dissenting opinion by POPOVICH, J.

POPOVICH, Judge, dissenting:

Upon review, I must respectfully dissent from the opinion of the majority. I cannot agree with my learned colleagues' conclusion that the lower court exercised "sound discretion" in recusing himself and granting a mistrial. After reviewing the trial transcript, I am convinced that the proceedings were far from "tumultuous," and that defense counsel did not inflict "abuse" upon the trial judge. Further, while I am as concerned as any jurist about the particular sensitivity with which oral examination of a six-year-old victim must be conducted, I am not convinced that defense counsel specifically undertook to intimidate the child witness, reduce her to tears or render her unable to testify. Rather, counsel's actions were simply designed to protect the constitutional rights of the defendant.

The trial transcript in this case is by no means lengthy, consisting of twenty-nine pages, with one three-and-one-half-inch column of double-spaced type per page. N.T., 7/9/96, pp. 4–33. The trial began with a request from the Commonwealth to clear the courtroom, which was granted. N.T., 7/9/96, pp. 4–5. A discussion between counsel and the court then ensued concerning the court's decision to permit the representative from the Women's Crisis Center to remain in the

courtroom during the child's testimony, stand directly behind the victim and touch the victim and her chair. N.T., 7/9/96, pp. 5–7. Despite counsel's objection, the court permitted the woman to remain standing behind the victim during her testimony. N.T., 7/9/96, pp. 6–7.

Next, the Commonwealth examined of the six-year-old victim for the purpose of determining her competency to testify. N.T., 7/9/96, pp. 8–15. Defense counsel did not interject during the Commonwealth's voir dire. Defense counsel then examined the child as to competency and, upon completion, objected to the child being permitted to testify. N.T., 7/9/96, pp. 15–21. The court found the child competent to testify.

Following a brief reopening of the competency determination, the Commonwealth began its examination of the child. The entire remainder of the trial follows:

MS. CARPINO: Thank you.

Heather, I want you to turn around and take a look at that guy right there in the green shirt.

Defense counsel—

Let the record reflect that I pointed to the defendant.

Do you know who he is, Heather?

THE WITNESS: Yes.

MS. CARPINO: What is his name?

THE WITNESS: Harry.

MS. CARPINO: Harry. How do you know Hzrry [sic]?

Is Harry your mom's friend?

MR. SCOTT–SEDLEY: Judge, if she is competent, she doesn't need to be led.

THE COURT: No, I don't see that as— that doesn't logically follow, and I will permit some leading.

MS. CARPINO: Thank you.

THE COURT: Like I said, the main thing is, I want to hear from Heather.

MS. CARPINO: Very well.

THE COURT: If you have like the mother here—

MS. CARPINO: The mom is here. She's going to testify.

Heather, do you remember your birthdate this year?

THE WITNESS: Yes.

MS. CARPINO: What was the date of your birthday again?

THE WITNESS: February 19.

MS. CARPINO: February 19 or 16?

THE WITNESS: 16.

MR. SCOTT–SEDLEY: Objection.

THE COURT: Objection sustained.

THE WITNESS: February 16.

MS. CARPINO: Are you sure about that?

THE WITNESS: February 16.

MS. CARPINO: How old did you turn this February?

THE WITNESS: Six.

MS. CARPINO: Do you remember anything that happened at your house at night after your birthday, after February 16, with Harry?

THE WITNESS: I don't want to talk about it.

MS. CARPINO: You don't want to talk about it.

THE WITNESS: I don't want to talk about it.

MS. CARPINO: You have to talk about it.

Okay, the judge is a very nice man. You need to tell him.

THE WITNESS: I don't want to.

MS. CARPINO: Heather, did Harry do something to you?

THE WITNESS: Yes.

MS. CARPINO: Tell the judge what Harry did to you.

THE WITNESS: I don't want to.

MS. CARPINO: You have to. You have to.

Tell him. He is a good man. You have to tell him.

MR. SCOTT–SEDLEY: I'm going to object at this point. It could be because she is being admonished to tell the truth.

MS. CARPINO: It could very well be because she is intimidated. She is a six-year-old child.

MR. SCOTT–SEDLEY: Let the record reflect that I'm standing right in front of

my client. My client couldn't very well be intimidating her, could he?

Let the record reflect that I am right in the line of vision of my client.

THE COURT: See, you just lost your situation. I have got a little girl crying, and you are bickering about your client. No good.

The child is now crying and upset. I call a recess in this case.

Heather, let's take a break, okay?

Take Heather with you, and counsel remain in place.

(The child is excused)

MR. SCOTT–SEDLEY: May I ask that the sequestration order remain?

THE COURT: You know what that is. You can't talk about the case. You cannot discuss and you cannot discuss the child's testimony.

Now, the child may leave.

Now, Mr. Sedley, you were about a foot away from the child, you tower over her, and Ms. Carpino, the same thing. You are arguing back and forth, and now the child is really upset, and starts crying. You can't argue that way with a child witness in the room, because what happens is, it breaks her down.

Now, we will come back to it, okay, and you may put on the record anything you want.

MR. SCOTT–SEDLEY: Judge, I was a good three feet away from the child.

THE COURT: I'll give you that one. I'll give you three feet away.

MR. SCOTT–SEDLEY: I was leaning against here deliberately, deliberately, Judge, so as not to intimidate her. I did it deliberately to allow her the freedom in quotes, to testify freely to this Court.

THE COURT: And what I could do is to show you how much you know about the freedom thing. I'll have you sit at the table. You have no right to be standing there. And you have no right to have this other lawyer here. You are asking for everything to be on your side, and it is ridiculous.

MR. SCOTT–SEDLEY: Well, then, Judge, let me ask that—

THE COURT: No. I'll tell you what I'm going to do. I will give you a— put this in B Court. Put this in B Court. We are not getting anywhere, and I don't like the things that you are doing here.

I'll recuse myself. Put it in B Court.

When you do something like that, I don't like it here. I'm not going to put up with it. I am recusing myself, and put it in B Court.

MR. SCOTT–SEDLEY: Just for my edification, my colleague being in the room, I don't know what bearing that has on it.

THE COURT: I do, and I don't owe you an explanation, and you are not getting one.

You abused the Court today. Your client will reap those consequences. You'll go to B Court with this. This is a big mistake.

MS. CARPINO: I will file an oral 6013 and ask for the earliest possible date.

THE CRIER: How much time do you expect this case is going to take, because they are going to ask that question?

MS. CARPINO: We have two other witnesses, but not real long. About an hour.

(Hearing concluded)

N.T., 7/9/96, pp. 25–33.

I certainly agree with the majority that a trial judge has the discretion to grant a mistrial *sua sponte* when such is manifestly necessary or the ends of public justice would otherwise be defeated, and we will not disturb that decision absent an abuse of that discretion. *United States v. Perez*, 9 Wheat. 579, 580, 6 L.Ed. 165 (1824); *Commonwealth v. Bartolomucci*, 468 Pa. 338, 362 A.2d 234 (1976); *Commonwealth v. Gains*, 383 Pa.Super. 208, 556 A.2d 870 (1989); *Commonwealth v. Balog*, 395 Pa.Super. 158, 576 A.2d 1092 (1990). Further, I agree that a judge must recuse himself when he believes that he cannot fairly and impartially hear a matter. *Commonwealth v. Boyle*, 498 Pa. 486, 447 A.2d 250 (1982). Also, I agree that when a judge is unable to proceed impartially, a mistrial is manifestly necessary to insure jus-

tice. *Commonwealth v. Smith*, 321 Pa.Super. 51, 467 A.2d 888, 891 (1983).

However, we must be ever mindful that a judge's decision to recuse himself and grant a mistrial are only made after a "scrupulous exercise of judicial discretion." *United States v. Jorn*, 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543, 556–57 (1971). Any doubt in the propriety of a mistrial must be resolved in favor of the accused. *Bartolomucci, supra.* While the court's decision is entitled to great deference, the Supreme Court has recognized that the failure to consider less drastic alternatives constitutes an abuse of discretion. *Arizona v. Washington*, 434 U.S. 497, 511, 98 S.Ct. 824, 833, 54 L.Ed.2d 717 (1978); *Commonwealth v. Diehl*, 532 Pa. 214, 216–18, 615 A.2d 690, 691 (1992).

After reviewing the record, I am convinced that the municipal court judge's decision to recuse himself was not based upon a "scrupulous exercise of judicial discretion." Further, the court's decision violated appellant's right to control the course to be followed in the event of error and to have his case determined in one trial. *United States v. Dinitz*, 424 U.S. 600, 609, 96 S.Ct. 1075, 1080, 47 L.Ed.2d 267, 275 (1976); *Commonwealth v. Ferguson*, 446 Pa. 24, 29, 285 A.2d 189, 191 (1971). Therefore, I am convinced that the prohibition against double jeopardy bars retrial of appellant. *See, Diehl, supra* (retrial barred by double jeopardy if court abused its discretion in granting a mistrial without considering less drastic alternatives).

In rendering my decision, I considered the following: First, I do not believe that the lower court was "abused" by defense counsel in any manner. While both the prosecution and defense counsel *may* have acted firmly towards the child-witness, the record does not reveal that their actions substantially deviated from their duties to the court and their clients. Moreover, in my estimation, defense counsel's examination of the child was neither overly confrontational nor hostile. Also, it is important to note that the lower court expressly recognized that the prosecutor was just as responsible for the victim's loss of composure as defense counsel. N.T., 7/9/96, p. 30.[1]

Second, I can certainly sympathize with the court's particularly protective concern for the emotional well-being of six-year-old victim, but I fail to see any action which warranted a mistrial. Certainly, crying by a child victim of sexual assault is not unusual during oral examination by counsel, given the sensitive subject matter of the inquiry. However, the judge's frustration and anger with both attorneys, especially defense counsel, are not grounds for a mistrial, absent such emotions rendering the court unable to proceed impartially. Nowhere in the record does the lower court state that it could not execute its adjudicatory function impartially and without bias. Rather, the court's abrupt declaration of a mistrial *sua sponte* appears to be a punishment for what the court perceived, without adequate reflection, to be "abuse." N.T., 7/9/96, p. 32.

Third, I do not believe that the lower court adequately considered alternatives to mistrial. The court declared a recess and excused the witness after she began to cry. Immediately thereafter, the court unleashed his ire upon both counsel, with special disdain for defense counsel and, only a few minutes later, declared the mistrial *sua sponte*. Not once before the recess did the trial court chastise defense counsel for his trial tactics, except to indicate his general displeasure after the witness began to cry. N.T., 7/9/96, p. 29. And when defense counsel was apparently going to ask the court how it would like the remainder to the trial to be conducted, the court interrupted and abruptly informed counsel that he was going to transfer the case to another judge in another courtroom. N.T., 7/9/96, p. 31. Based on such actions, I do not believe that the court even considered other less drastic measures, much less "scrupulously exercise his discretion" to declare a mistrial.

In sum, I am convinced that the lower court's action was intemperate and without the reflection and due consideration warranted when granting a mistrial *sua sponte*.

---

1. In fact, the child began to cry during the Commonwealth's direct examination, when the victim refused to answer the prosecution's questions.

There is absolutely nothing in the record to suggest that the court considered or applied less drastic measures. I submit that a recess to allow the child-victim, the court and counsel *all* to regain their composure, coupled with specific instructions by the court with regard to both counsel's conduct during the remainder of the trial would have remedied the situation. Certainly, if such measures failed, the court could have thereafter declared a mistrial based upon "manifest necessity." However, under the present circumstances, I doubt the propriety of the mistrial. Since we must resolve the issue in the accused's favor, *Bartolomucci, supra,* I cannot agree with the majority's determination, and I would find that retrial of appellant would impermissibly place him twice in jeopardy.

