J-S39008-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| FRANK ARCHIE | : | |
| | : | |
| Appellant | : | No. 749 EDA 2018 |

Appeal from the Judgment of Sentence February 15, 2018
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0005148-2015

BEFORE: GANTMAN, P.J.E., STABILE, J., and STEVENS*, P.J.E.

MEMORANDUM BY GANTMAN, P.J.E.: **FILED SEPTEMBER 06, 2019**

Appellant, Frank Archie, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his jury trial convictions for possession with the intent to deliver a controlled substance ("PWID"), criminal conspiracy to commit PWID, persons not to possess firearms, firearms not to be carried without a license, and carrying a firearm on public streets or public property in Philadelphia.[1]  We affirm.

The relevant facts and procedural history of this appeal are as follows. Around midnight on January 14, 2015, Officers William Nagy and Jose Hamoy responded to a radio call concerning an activated burglar alarm at a store in Philadelphia.  Upon their arrival at the scene, the officers did not hear a burglar

_____

[1] 35 P.S. § 780-113(a)(30), 18 Pa.C.S.A. §§ 903, 6105(a)(1), 6106(a)(1), and 6108, respectively.

_____

* Former Justice specially assigned to the Superior Court.

alarm or detect any signs of forced entry. As the officers returned to their patrol car, however, they noticed the potent chemical odor of phencyclidine ("PCP"), which the officers suspected was emanating from a nearby vehicle occupied by Appellant and his girlfriend ("Co-Defendant"). Officer Nagy approached Co-Defendant in the front passenger seat, while Officer Hamoy approached Appellant in the driver's seat. Co-Defendant lowered the front passenger window as Officer Nagy approached, and the smell of PCP became stronger. Officer Nagy asked Co-Defendant to step out of the vehicle, at which time the officer observed a vial containing a brownish liquid of suspected PCP in the front pocket of her sweatshirt. Co-Defendant was searched, and the officers recovered a second vial of suspected PCP tucked in her bra.

Officer Hamoy also asked Appellant to exit the vehicle. Officer Hamoy sent Appellant to the rear of the vehicle with Officer Nagy, while Officer Hamoy walked to the front passenger side of the car. Once there, Officer Hamoy observed a black handgun on the floor of the vehicle, leaning against the center console. Officer Hamoy alerted Officer Nagy of his discovery, conducted a search of the immediate area for additional weapons, and discovered two amber pill bottles in the center console of the vehicle. One bottle contained eighty-two (82) blue pills, later identified as Xanax, a Schedule IV narcotic. The other bottle contained thirty-two (32) peach pills, later identified as amphetamine with dextroamphetamine, a Schedule II narcotic. Appellant was arrested, and a search of his person uncovered

several containers of marijuana, as well as $605.00. When asked, Appellant denied the firearm belonged to him. Rather, Co-Defendant claimed ownership of the gun but admitted she did not have a permit to carry it.

A jury trial commenced on November 30, 2016. At trial, Officer Nagy testified he doubted Co-Defendant's claim that the gun belonged to her. The following exchange took place on redirect examination by the assistant district attorney of Officer Nagy:

> **Q**: Officer, did you believe [Co-Defendant] when she told you that it was her gun?
>
> **A**: No.
>
> **Q**: Why not?
>
> **A**: After running her, I saw that she had no—well, at least from our system, she had no prior arrest record.

(N.T. Trial, 11/30/16, at 48.) In response to this line of questioning, Appellant objected and a brief conversation was held at sidebar. Following sidebar, the assistant district attorney continued:

> **Q**: Officer, you were explaining why you didn't believe [Co-Defendant] when she said it was…her gun.
>
> **A**: [Co-Defendant] did not have a previous record. It was her first time being arrested, whereas—

(*Id.*) Appellant immediately objected, and the court cut off Officer Nagy's testimony and instructed him to wait for the next question. The court later addressed Appellant's objection, stating:

> For the record, I recognize [Appellant's] objection to the direction in which [the assistant district attorney] was taking

the witness as far as the prior record for [Co-Defendant], and it didn't get any further than that because it was very suggestive possibly.

But, [Appellant], your objection is noted for the record. I believe we escaped a little bit of a problem, but your objection was noted and was timely made….

(*Id.* at 50.)

Later, following both Co-Defendant's and Officer Hamoy's testimony, the court addressed further objections by Appellant, as well as Appellant's request for a mistrial based on statements made by Co-Defendant. The court stated:

The record should reflect objections made at sidebar, but were not recorded at the time, I did not want to get in the way of the testimony.

Number one, [Appellant's] objection to testimony by [Co-Defendant] with respect to some statements that she made, which could possibly have caused the jury to look [askance] at [Appellant]. There was a motion for a mistrial, timely made, with respect to anything that [Co-Defendant] said in saying that she told police or she knew she had no prior record, and at that, would let her take the case.

Number one, I didn't think it was too far to the edge to reflect upon [Appellant]. And number two, we can control what the police say at the time about who said what to whom as a civilian, not quite as much control. So whatever comes out of her mouth regarding why she might be "taking the case" for [Appellant], I felt was not enough to grant a mistrial.

(*Id.* at 104-105.)

At the conclusion of trial, after additional testimony from Co-Defendant's cousin and a narcotics expert, Appellant again moved for a mistrial, stating, "[T]here were multiple witnesses via police officers that testified that [Co-

- 4 -

Defendant] did not have or the lack of a record, therefore insinuating that [Appellant] did have a record." (N.T. Trial, 12/1/16, at 15.) The court denied the request, explaining:

> Well, I understand by suggestion that the police officer said, well, we checked her and because she didn't have a record— there's a way I could have heard that and it would've bothered me, but in this case it didn't for some reason.
>
> But I think we headed it off and [Appellant] made the proper objection at the right time. And I think we got the officer in the right direction to cover that.
>
> [Appellant], you made a timely objection covered by the record and your mistrial motion is denied.

(*Id.* at 16.)

On December 1, 2016, the jury convicted Appellant of the offenses. The court sentenced Appellant on February 15, 2018, to an aggregate five (5) to ten (10) years' imprisonment, followed by 5 years' probation. Appellant timely filed a notice of appeal on March 13, 2018. On April 30, 2018, the court ordered Appellant to file a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(b); Appellant complied.

Appellant raises the following issue for our review:

> DID NOT THE [TRIAL] COURT ERR IN DENYING APPELLANT'S MOTION FOR A MISTRIAL AFTER THE POLICE OFFICER TESTIFIED THAT HE DID NOT BELIEVE THE FEMALE CO-DEFENDANT WHEN SHE SAID THE FIREARM WAS HERS BECAUSE "SHE HAD NO PRIOR ARREST RECORD," A STATEMENT WHICH CLEARLY AND IMPERMISSIBLY BROADCAST TO THE JURY THAT HER CO-DEFENDANT, APPELLANT, DID HAVE A PRIOR ARREST RECORD; AND WAS NOT THIS ERROR COMPOUNDED WHEN, AFTER THE ORIGINAL OBJECTION, THE

- 5 -

> PROSECUTOR WENT ON TO ELICIT FROM THE OFFICER THAT THE FEMALE CO-DEFENDANT "DID NOT HAVE A PREVIOUS RECORD. IT WAS HER FIRST TIME BEING ARRESTED…," WHERE SUCH TESTIMONY DENIED APPELLANT HIS PENNSYLVANIA AND UNITED STATES CONSTITUTIONAL RIGHT TO DUE PROCESS AND A FAIR TRIAL?

(Appellant's Brief at 3).

Appellant argues he was prejudiced by Officer Nagy's testimony that he did not believe Co-Defendant owned the gun, because she had no prior arrest record. Appellant alleges this testimony, both individually and in conjunction with testimony from the other police officers regarding their disbelief of Co-Defendant, impermissibly broadcast to the jury that Appellant did have an arrest history. Appellant asserts this testimony was so prejudicial that it denied him his constitutional right to due process, particularly his rights to a presumption of innocence and a fair trial. Appellant maintains the trial court abused its discretion in denying his request for a mistrial. Appellant concludes this Court must vacate the judgment of sentence and remand for a new trial. We disagree.

Appellate review of the denial of a motion for mistrial implicates the following:

> A motion for mistrial is within the discretion of the trial court. A mistrial upon motion of one of the parties is required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial trial. It is within the trial court's discretion to determine whether a defendant was prejudiced by the incident that is the basis of a motion for mistrial. On appeal, our standard of review is whether the trial court abused that

- 6 -

discretion.

An abuse of discretion is more than an error in judgment. On appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised by the trial court was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will.

*Commonwealth v. Tejeda*, 834 A.2d 619, 623 (Pa.Super. 2003) (internal citations and quotation marks omitted). *See also Commonwealth v. Melendez-Rodriguez*, 856 A.2d 1278, 1288 (Pa.Super. 2004) (*en banc*).

The Pennsylvania Rules of Criminal Procedure Rule 605 in pertinent part provides:

**Rule 605.      Mistrial**

\*      \*      \*

(B)   When an event prejudicial to the defendant occurs during trial only the defendant may move for a mistrial; the motion shall be made when the event is disclosed. Otherwise, the trial court may declare a mistrial only for reasons of manifest necessity.

\*      \*      \*

Pa.R.Crim.P. 605(B).  Pursuant to this rule, a motion for a mistrial is timely if it is "made when the alleged prejudicial event occurs." *Commonwealth v. Boring*, 684 A.2d 561, 568 (Pa.Super. 1996), *appeal denied*, 547 Pa. 723, 689 A.2d 230 (1997).  "When an event prejudicial to a defendant occurs at trial, he may either object, requesting curative instructions, or move for a mistrial." *Id.* (emphasis added).  An allegedly prejudicial event at trial requires a prompt objection from the defense and a request for a mistrial to

preserve the issue for appellate review. ***Commonwealth v. Rhone***, 619 A.2d 1080 (Pa.Super. 1993), *appeal denied*, 534 Pa. 653, 627 A.2d 731 (1993). If a defendant fails to move for a mistrial contemporaneously with the allegedly prejudicial incident at trial, "any potential claim is waived and the defendant is entitled to relief only if the trial judge finds a new trial to be a 'manifest necessity.'" ***Commonwealth v. Montalvo***, 641 A.2d 1176, 1188 (Pa.Super. 1994). "Reviewing courts use no mechanical formula in determining whether a trial court had a manifest need to declare a mistrial. Rather, '…varying and often unique situations aris[e] during the course of a criminal trial...[and] the broad discretion reserved to the trial judge in such circumstances has been consistently reiterated….'" ***Commonwealth v. Leister***, 712 A.2d 332, 335 (Pa.Super. 1998), *appeal denied*, 557 Pa. 627, 732 A.2d 613 (1998) (quoting ***Illinois v. Somerville***, 410 U.S. 458, 462, 93 S.Ct. 1066, 1069, 35 L.Ed.2d 425 (1973)) (edits in original).

Additionally, "[i]ssues not raised in the [trial] court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). "[I]ssues are preserved when objections are made timely to the error or offense." ***Commonwealth v. Baumhammers***, 599 Pa. 1, 23, 960 A.2d 59, 73 (2008), *cert. denied*, 558 U.S. 821, 130 S.Ct. 104, 175 L.Ed.2d 31 (2009). "[A] party may not remain silent and afterwards complain of matters which, if erroneous, the court would have corrected." ***Commonwealth v. Strunk***, 953 A.2d 577, 579 (Pa.Super. 2008) (quoting ***Commonwealth v. Clair***, 458 Pa. 418, 423,

326 A.2d 272, 274 (1974)). *See e.g. Commonwealth v. Burns*, 765 A.2d 1144 (Pa.Super. 2000), *appeal denied*, 566 Pa. 657, 782 A.2d 542 (2001) (holding appellant waived his argument regarding trial court's decision to strike prospective juror because appellant failed to object on record).

Instantly, Officers Nagy and Hamoy arrested Appellant and Co-Defendant when the officers smelled PCP emanating from Appellant's nearby vehicle. In the course of the interaction, Officer Hamoy discovered a handgun on the floor of the front passenger seat. Appellant denied ownership of the firearm while Co-Defendant claimed it belonged to her. At trial, however, Officer Nagy testified that he did not believe Co-Defendant owned the weapon because she "did not have a previous [arrest] record. It was her first time being arrested, whereas—." (*See* N.T. Trial, 11/30/16, at 48.) Appellant objected, and the court cut off Officer Nagy's testimony before it implicated Appellant.

Later, after both Co-Defendant and Officer Hamoy testified, Appellant requested a mistrial. The court described Appellant's request for a mistrial as one made "with respect to anything that [Co-Defendant] said in saying that she told police or she knew she had no prior record, and at that, would let her take the case." (*See id.* at 105.) Appellant's initial request for a mistrial was therefore based on Co-Defendant's testimony, not Officer Nagy's. Appellant did not seek a mistrial based on Officer Nagy's testimony (the sole complaint on appeal) until after closing arguments. Thus, Appellant's claim for a mistrial

based on Officer Nagy's testimony is waived, because Appellant failed to request a mistrial contemporaneously with his objection to Officer Nagy's testimony at trial. **See** Pa.R.Crim.P. 605(B); **Montalvo, supra**; **See also Commonwealth v. Brinkley**, 505 Pa. 442, 480 A.2d 980 (1984) (holding trial court properly denied motion for mistrial made day after allegedly prejudicial event). Moreover, to the extent Appellant challenges testimony from police officers other than Officer Nagy, those claims are waived as counsel objected only to Officer Nagy's testimony at trial. **See** Pa.R.A.P. 302(a); **Baumhammers, supra**; **Strunk, supra**.

Furthermore, even if properly preserved, Appellant's claim merits no relief in any event. Appellant's objection prevented Officer Nagy from implicating Appellant. The court interjected and instructed Officer Nagy to wait for the next question. As a result, Officer Nagy had no opportunity to suggest Appellant's arrest record. Appellant was therefore not deprived of a fair and impartial trial on this ground. Thus, the court properly denied Appellant's request for a mistrial. **See Tejeda, supra**. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/6/19