J-S30008-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| WYATT ALEXANDER EVANS | : | |
| | : | |
| Appellant | : | No. 254 MDA 2021 |

Appeal from the Order Entered January 26, 2021
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0006408-2019

BEFORE:   BENDER, P.J.E., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY BENDER, P.J.E.:          **FILED OCTOBER 25, 2021**

Appellant, Wyatt Alexander Evans, appeals from the trial court's January 26, 2021 order denying his motion to dismiss the charges of robbery, conspiracy to commit robbery, and public drunkenness that are pending against him.  After careful review, we affirm.

The facts underlying the present appeal were summarized by the Commonwealth, as follows:

> On July 27, 2019[,] charges were filed against [Appellant] for the offense of [r]obbery involving a case where [Appellant] demanded … property [from] the victim[, who] surrendered his cell phone.  When [Appellant] was subsequently captured and **[M]irandized**[1] by Officer Brian Lehman, the [o]fficer recovered the victim's cell phone and [Appellant] confessed to committing the robbery.  During the pendency of the instant case, the COVID-

[*] Retired Senior Judge assigned to the Superior Court.

[1] **Miranda v. Arizona**, 384 U.S. 436 (1966).

19 pandemic occurred. Jury trials were stayed pending the end of the emergency, though the court did engage in experiments to see if trials could be safely conducted during the state of emergency.

On October 6, 2020, [Appellant's] jury trial commenced during this COVID-19 pandemic state of emergency. N.T. Jury Trial, 10/06/2020[,] at 3. A mistrial was granted on October 6, 2020, when [Appellant] revealed that on October 5, 2020, he had been exposed to a coworker diagnosed with COVID-19, but [Appellant] failed to inform his counsel or the court until the trial had started. *Id.* at 144-[]45, 147.[2] [Appellant thereafter] filed a Motion to Dismiss Pursuant to Pa.[R.]Crim.[]P. 587.[3] [Following a hearing

_____

[2] It was revealed that Appellant's employer had directed him to self-quarantine and obtain a COVID-19 test. *See* Trial Court Opinion (TCO), 4/26/21, at 2. However, Appellant took no steps to get tested before his trial commenced the following day. *Id.* at 10.

[3] That rule states, in pertinent part:

**(B) Double Jeopardy**

(1) A motion to dismiss on double jeopardy grounds shall state specifically and with particularity the basis for the claim of double jeopardy and the facts that support the claim.

(2) A hearing on the motion shall be scheduled in accordance with Rule 577 (Procedures Following Filing of Motion). The hearing shall be conducted on the record in open court.

(3) At the conclusion of the hearing, the judge shall enter on the record a statement of findings of fact and conclusions of law and shall issue an order granting or denying the motion.

(4) In a case in which the judge denies the motion, the findings of fact shall include a specific finding as to frivolousness.

(5) If the judge makes a finding that the motion is frivolous, the judge shall advise the defendant on the record that a defendant has a right to file a petition for review of that determination pursuant to Rule of Appellate Procedure 1573 within 30 days of the order denying the motion.

*(Footnote Continued Next Page)*

on that motion, it] was denied and [Appellant] … filed the instant appeal.

Commonwealth's Brief at 5.

The trial court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and he timely complied. The court thereafter filed its Rule 1925(a) opinion. Herein, Appellant states two issues for our review:

> I. Whether the trial court violated [Appellant's] constitutional rights to a fair trial under the United States and Pennsylvania Constitutions by requiring him to remove his face covering during a jury trial during the COVID-19 pandemic.
>
> II. Whether the trial court erred by failing to give meaningful consideration to reasonable alternatives before *sua sponte* declaring a mistrial over [Appellant's] objection without manifest necessity to do so.

Appellant's Brief at 4 (bolded emphasis omitted).

Appellant first claims that the trial court violated his constitutional rights by deciding, prior to declaring a mistrial, that he would be required to remove his facemask for the remainder of his jury trial. According to Appellant, the court's directive for him to remove his facemask impermissibly singled him out from everyone else in the courtroom and caused him prejudice, thereby denying him a fair trial.

---

> (6) If the judge denies the motion but does not find it frivolous, the judge shall advise the defendant on the record that the denial is immediately appealable as a collateral order.

Pa.R.Crim.P. 587(B).

- 3 -

Appellant's argument is mooted by the fact that he never appeared before the jury without a mask. Instead, during discussions about Appellant's taking off his mask, he revealed to his counsel (who then informed the court) that Appellant had been exposed to COVID-19 the day before. *See* N.T. Jury Trial at 141. In light of this admission, the court declared a mistrial. *Id.* at 147. Thus, we do not address the propriety of the court's ordering Appellant to remove his facemask for trial.

In Appellant's second issue, he claims that there was no manifest necessity for the court's declaring a mistrial. He argues that "[a]n individual's possible exposure to COVID-19 is not sufficient to create a manifest necessity to end a trial." Appellant's Brief at 11. Appellant further insists that the court did not adequately consider alternatives to a mistrial, such as permitting him to continue to wear his mask or take a rapid COVID-test to determine if he had the virus. Because there was no manifest necessity for a mistrial, Appellant avers that double jeopardy bars the Commonwealth from retrying him a second time.

We disagree. A "trial judge may declare a mistrial only for reasons of manifest necessity." Pa.R.Crim.P. 605. Our Supreme Court has explained that

> we must take into consideration all the circumstances when passing upon the propriety of a declaration of mistrial by the trial court. The determination by a trial court to declare a mistrial after jeopardy has attached is not one to be lightly undertaken, since the defendant has a substantial interest in having his fate determined by the jury first impaneled. Additionally, failure to consider if there are less drastic

- 4 -

alternatives to a mistrial creates doubt about the propriety of the exercise of the trial judge's discretion and is grounds for barring retrial because it indicates that the court failed to properly consider the defendant's significant interest in whether or not to take the case from the jury. Finally, it is well established that any doubt relative to the existence of manifest necessity should be resolved in favor of the defendant.

***Commonwealth v. Diehl***, 615 A.2d 690, 691 (Pa. 1992) (internal citations omitted).

Here, in considering Appellant's arguments, we have reviewed the certified record, the Commonwealth's brief, and the detailed opinion by the Honorable Maria Musti Cook of the Court of Common Pleas of York County. Contrary to Appellant's claims on appeal, Judge Musti Cook's opinion demonstrates that she carefully considered the alternatives to a mistrial that were proposed by Appellant. ***See*** TCO at 7-13. She also took into account the COVID-19 safety measures the court was directed to follow, and the number of positive COVID-19 cases at the county, state, and federal levels at the time of Appellant's trial. ***See id.*** at 3-7. In light of all of these factors, Judge Musti Cook concluded that Appellant's possible exposure to COVID-19 made it manifestly necessary to declare a mistrial. We discern no error in her decision, and we adopt her rationale in concluding that double jeopardy does not bar Appellant's retrial. Thus, we affirm the order denying his motion to dismiss the charges against him for the reasons set forth in Judge Musti Cook's opinion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/25/2021

# IN THE COURT OF COMMON PLEAS OF YORK COUNTY, PENNSYLVANIA
## CRIMINAL DIVISION

COMMONWEALTH OF
PENNSYLVANIA

        :       NO. CP-67-CR-6408-2019

        :

V.           :

        :

WYATT ALEXANDER EVANS    :
Appellant            :

## STATEMENT OF LOWER COURT PURSUANT TO PA.R.A.P. 1925(a)

AND NOW, this 26th day of April, 2021, upon receipt of a notice that an appeal has been filed in this matter, and in consideration of the "Statement of Matters Complained Of filed on behalf of Wyatt Alexander Evans ("Defendant"), the undersigned files this statement pursuant to PA.R.A.P. 1925(a).

Defendant asserts a number of errors by this Court as a result of the mistrial that was ordered on October 6, 2020. A trial by jury was

1

commenced on October 6, 2020, during the COVID-19 pandemic. The mistrial was granted on October 6, 2020, after the revelation by defense counsel that Defendant had been exposed the previous day at his place of employment to someone who had tested positive for COVID-19. Counsel reported that Defendant had been directed by his employer to go home and self-quarantine until he obtained a negative test.[1] This information was not shared with defense counsel until after the trial commenced and apparently, defense counsel made no inquiries of Defendant as to any potential exposure to COVID-19 before the start of trial.

After the declaration of mistrial, Defendant filed a Motion to Dismiss Pursuant to Pa.Crim. R.P. No. 587. A hearing on the motion to dismiss was held on January 26, 2021, after which the Motion was denied. Notice of Appeal was filed by Defendant on February 17, 2019.

---

[1] This advice from the employer was indicated by Defendant through his counsel, but fails to comply with the guidelines from the Pennsylvania Department of Health.

2

## COVID-19 Modifications

During the COVID-19 pandemic, jury trials were suspended in York County from March 16, 2020, to July 6, 2020. The weeks of July 6, 2020, through July 17, 2020, were basically an "experiment" to return jurors to the Judicial Center with the hope of developing a safe plan to resume jury trials. Only two judges, as opposed to five to seven judges, were sitting for jury trials in the two largest courtrooms in the Judicial Center during this period in July 2020. Plexiglass partitions were installed in front of counsel tables, the witness stand and the judge's bench. The courtrooms were re-configured to take half the jury members out of the jury box and space seating in the well of the courtroom where defense counsel would normally be seated. A large plexiglass partition was installed between the jurors and counsel tables.

*Voir dire* was conducted in the large jury assembly room so that the jury panel could be properly social-distanced. All participants were required to wear masks. Upon entry into the Judicial Center, jurors answered questionnaires regarding exposure to COVID-19, experience of

3

symptoms, pre-existing conditions and general concerns regarding exposure to the COVID-19 virus. Requests to be excused were liberally granted to jurors.

In the courtrooms, there was no approaching the witnesses by counsel or traditional sidebars. Exhibit binders were required or gloved tipstaves and/or deputies brought physical evidence to the witness. Headsets and white noise were used by the judge and counsel for any sidebar discussions. Jurors stayed in the large court room for breaks and jury deliberations, and counsel and the court vacated the courtroom. Significant efforts were taken to ensure the safety of all persons present.

After the two-week "experiment", the York County bench held further discussions to review the results and juror concerns/comments to develop a plan for the remainder of the pandemic. Prior to March of 2020, York County conducted six two-week trial terms with five to seven judges simultaneously presiding over criminal and civil trials. After the July "experiment", a continuous trial term was developed commencing September 8, 2020, where two judges per week presided over jury trials.

4

Commencing September 8, 2020, each trial judge's court room was modified along the same lines as the larger courtrooms had been modified during the July experiment. Social distancing was a primary concern, although the smaller courtrooms did not permit social distancing to occur to the same extent as had occurred during the July experiment. Discussion among the trial judges took place that addressed concerns with being able to hear and understand witnesses and counsel when each was speaking. After discussion, a policy was approved for permission to remove face masks while conducting direct or cross-examination or while a witness was testifying, particularly in light of the fact that plexiglass barriers existed in front of the witness stand, counsel tables, the court reporter, court clerk, the judge, counsel tables and the sectioned-off jury area.

Further discussion took place as to whether the jury should be able to view Defendant for identification purposes and to observe his demeanor throughout the trial while witnesses were testifying. This discussion led to a decision to ask the Defendant to remove his mask during trial with an instruction to the jury as to why this was being permitted, and again with

5

Defendant separated by two areas of plexiglass from everyone other than his/her counsel and deputy sheriffs.

COVID-19 continues to be a moving target with policies and procedures modified as directives from AOPC[2], CDC[3] and the Governor's office provide the courts with additional guidance. The Court remained cognizant of the rates of positive tests within the York community and within the state to monitor whether it was safe to continue with jury trials. Ultimately, jury trials were again suspended November 30, 2020, and did not resume until March 1, 2021.

As of October 6, 2020, the most recent Alert provided by Pennsylvania Department of Health Secretary Rachel Levine was dated September 14, 2020. The Alert provided guidance for patients under quarantine after exposure to the virus. The Alert provided that individuals coming in close contact with a person who had COVID-19, **must** quarantine

---

[2] Administrative Office of Pennsylvania Courts

[3] Center for Disease Control.

6

for fourteen (14) days from last contact, <u>even if the person remains asymptomatic</u>. Transcript of January 26, 2021, Exhibit 2. (emphasis added.) The Alert further provided that a negative test result obtained while under quarantine would not release a person from quarantine. <u>Id.</u>

As of October 1, 2020, Pennsylvania had a total of 160,123 positive cases for COVID-19 with 8,160 deaths[4]. In the United States, as of October 1, 2020, there were 7,266,942 positive cases, and 207,550 deaths attributed to COVID-19.[5] In York County, Pennsylvania, as of October 1, 2020, there were 43,072 positive cases and 766 deaths as a result of COVID-19.[6] During the trial week in question, Pennsylvania had experienced its highest number of COVID-19 cases in six months.[7]

**Facts Before the Court**

On October 6, 2020, after testimony of the first fact witness in the trial, Defendant indicated through his counsel that he had been exposed the

---

[4] www.pennlive.com
[5] En.as.com/en/2020/10/01/latestnews
[6] LehighValleylive.com
[7] *PA Reports Highest Number Of New COVID-19 Cases In 6 Months*, www.msn.com/en-us/health/medical/Pa - 10/10/2020. Kara Seymour

7

previous day, in his place of employment, to an individual who tested positive for COVID-19. Defendant was directed by his employer to go home and self-quarantine until he could be tested. Instead, Defendant appeared for trial the next morning and gave no indication that he had been exposed until after the jury was sworn in, opening statements had been made and testimony had commenced. Counsel provided no further specific information to the Court.

Counsel makes much of the fact that this issue only came to light because the Court asked Defendant to remove his mask so that the jury could observe his demeanor. But mask or no mask, Defendant should never have entered the Judicial Center, the jury assembly room for *voir dire,* or the courtroom for the trial. Defendant sat for an extended period of time in close proximity to his counsel, a deputy sheriff assigned to the court room and came into close contact with the tipstaff and others in the courtroom. Defendant had no regard for the safety of anyone in the court room.

When this Court became aware of Defendant's exposure, we immediately halted the trial, addressed the matter with court administration

8

and determined for the safety of all persons within the court room that there was manifest necessity to declare a mistrial.

Defendant argues prejudice but cites nothing specific that demonstrates how he has been prejudiced by the mistrial. Rather, the Motion to Dismiss centered the argument of prejudice on the Court's request of the Defendant to remove his mask. Again, that has no relevance to the information that came to light – ie., the Defendant's exposure to COVID-19, and the basis for the mistrial. Counsel for Defendant is under the misguided belief that giving Defendant the opportunity to remain in the court room with his mask on was a viable solution to avoid other individuals in the court room from being potentially exposed to a deadly virus. This is directly contrary to any information available to the Court from the CDC or Pennsylvania Department of Health.

Defense counsel also asserts that the trial could have been delayed so that Defendant could have obtained a rapid COVID-19 test and received results within twenty-four (24) hours. This Court does not find that assertion credible in the York County area in early October 2020. Even

9

months later, in January 2021, this Court is aware that rapid test results were taking several days to acquire. Further, Defendant was instructed by his employer on October 5, 2020, to be tested and took no steps to initiate that process.

PA. Crim. R.P. No. 605 provides that the trial judge may declare a mistrial only for reasons of manifest necessity. In reviewing a trial court's determination of manifest necessity, the appellate courts have indicated:

> We do not apply a mechanical formula in determining whether a trial court had a manifest need to declare a mistrial. Rather, 'varying and often unique situations arise during the course of a criminal trial . . . [and] the broad discretion reserved to the trial judge in such circumstances has been consistently reiterated'...

Commonwealth v. Leister, 712 A.2d 332, 335, (Pa.Super. 1998), quoting Illinois v. Somerville, 410 U.S. 458, 462 [ ] (1973)). (some internal citations omitted)

In the present case, in fifteen years on the bench, this Court has had no more unique or varying circumstance than trying to conduct a safe and

10

fair trial during the COVID-19 pandemic. The ever-changing protocols and precautions necessary to ensure the safety of all participants within the court room, from juror to defendant to lawyer to court reporter to deputy to clerk to tipstaff to judge, has been a daily, evolving process. This Court's prime consideration in the midst of one the worst weeks for reported cases in Pennsylvania was to assure that everyone was safe in the court room to the best of the Court's ability.

The jurors were reminded that the Court and court administration had taken extra precautionary steps, as outlined previously herein, to assure their safety and peace of mind in carrying out this most important civic duty of jury service. Defendant sat through this Court's explanations of those safety precautions before the trial commenced and made no mention of his exposure to COVID-19 on the previous day. In fact, the Court met with counsel and Defendant in the court room before jury selection, in the court room after jury selection and in the court room before the trial proceedings began after lunch, and at no time did the Defendant ever indicate that he had been exposed the previous day and directed to self-quarantine.

11

Given the deadly nature of the COVID-19 virus, the instructions to self- quarantine when exposed, even if asymptomatic, and the number of individuals to potentially be exposed by the continuation of the trial, this Court remains firm in the decision to declare a mistrial for manifest necessity. Defendant's request to continue the trial and remain masked was not a reasonable alternative under any health and safety recommendation available at the time of trial and would not assure the protection of others in the courtroom. The delay of the trial to await test results would have been too lengthy and would not have been in accordance with CDC protocols, as said protocols specifically indicate that "a negative test result obtained while a close contact is under quarantine does not release the person from quarantine. Because infection can develop up to 14 days after exposure, persons with negative test results must still quarantine for the full 14 days." Transcript of January 26, 2021, Exhibit 2.

Based on the information before this Court on October 6, 2020, manifest necessity existed to declare a mistrial. We have not addressed the errors asserted by Defendant relating to the request to remove his mask as

12

the issue of the mask played no role in the court's declaration of a mistrial. For the reasons stated herein, this Court respectfully requests the denial of Defendant's appeal.

The Clerk of Courts is directed to provide notice of the entry of this Statement to the District Attorney's Office and Attorney Alisa Livaditis on behalf of Defendant, Wyatt Alexander Evans.

BY THE COURT,

MARIA MUSTI COOK, JUDGE

13