J-S22006-25

2025 PA Super 236

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| MARK A. BOYER | : | |
| Appellant | : | No. 1 MDA 2025 |

Appeal from the Judgment of Sentence Entered December 9, 2024
In the Court of Common Pleas of Union County Criminal Division at
No(s): CP-60-CR-0000235-2022

BEFORE: LAZARUS, P.J., BOWES, J., and STEVENS, P.J.E.*

OPINION BY LAZARUS, P.J.: **FILED: OCTOBER 17, 2025**

Mark A. Boyer appeals from the judgment of sentence entered in the Court of Common Pleas of Union County. We affirm.

Due to our disposition, we need not engage in an in-depth recitation of the underlying facts of this case. In brief, Boyer's first jury trial ended in a mistrial, after which Boyer was tried on June 24-25, 2024, and a jury convicted him of involuntary deviate sexual intercourse (IDSI),[1] sexual assault,[2] terroristic threats with intent to terrorize another,[3] indecent assault,[4] and

___

* Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 3123(a)(1).

[2] *Id.* at § 3124.1.

[3] *Id.* at § 2706(a)(1).

[4] *Id.* at § 3126(a)(1).

simple assault.[5]  The trial court convicted Boyer of one summary count of harassment.[6]  The victim was Boyer's ex-girlfriend.

Following conviction, the court imposed an aggregate sentence of one hundred twenty-two (122) months' to twenty-seven (27) years' imprisonment.  Boyer filed a timely appeal.[7]  Both Boyer and the trial court have complied with Pa.R.A.P. 1925.

Boyer raises the following issues:

> (1) Did the trial court abuse its discretion and/or commit an error of law in granting the Commonwealth's request for a mistrial or

---

[5] *Id.* at § 2701(a)(1).

[6] *Id.* at § 2709(a)(1).

[7] Although the trial court denied Boyer's motion to dismiss on double jeopardy grounds on April 26, 2024, where the trial court does not find the motion frivolous, the order is immediately appealable as an appeal from a collateral order. *See* Pa.R.Crim.P. 587(b)(6); Pa.R.A.P. 313, cmt. (citing *Commonwealth v. Brady*, 508 A.2d 286, 289-91 (Pa. 1986) (allowing immediate appeal from denial of motion to dismiss based on double jeopardy under collateral order doctrine where trial court does not make finding of frivolousness)). Here, after the trial court declared a mistrial, and it subsequently denied Boyer's motion to dismiss, it did not make an express finding that the motion was frivolous. *See* Order, 4/26/24.  Accordingly, this appeal is properly before this Court.  *See* Pa.R.Crim.P. 587(b)(6); Pa.R.A.P. 313, cmt.; *Brady*, 508 A.2d at 289-91.  *See also Commonwealth v. Gross*, 232 A.2d 819, 832-33 (Pa. Super. 2020) ("an order denying a double jeopardy motion, that makes no finding that the motion is frivolous, is a collateral order under Rule 313 of the Pennsylvania Rules of Appellate Procedure").  The Note to Rule 313 states that an established example of a collateral order is an order denying a pretrial motion to dismiss "based on double jeopardy in which the court does not find the motion frivolous." Pa.R.A.P. 313, cmt. (citing *Commonwealth v. Orie*, 22 A.3d 1021 (Pa. 2011) and *Brady*, *supra*).

entering a mistrial sua sponte in the first jury trial on September 18, 2023?

(2) Did the second jury trial violate [Boyer's] Double Jeopardy rights under the 5th Amendment to the United States Constitution and Article I, Section 10 of the Pennsylvania Constitution?

(3) Did the trial court abuse its discretion and/or commit an error of law in denying [Boyer's] pretrial request to present Pa.R.Crim.P. 404(b) evidence against the alleged victim, [] and against Commonwealth witness, Eric Aikey, in the second jury trial?

(4) Did the trial court abuse its discretion and/or commit an error of law in denying [Boyer's] request to elicit impeachment testimony from Commonwealth witness, Eric Aikey, on cross-examination during the second jury trial, concerning whether he was on probation/parole for a Megan's Law sexual offense at the time of the alleged incident, and whether on the date and time he testified that he did not have interaction with [Boyer], as [Boyer] had testified he had, he was attending a treatment group for convicted sex offenders as a condition of his probation/parole?

(5) Was the evidence produced by the Commonwealth at trial sufficient to sustain a verdict of guilty against [Boyer] on all charges in the second jury trial?

Appellant's Brief, at 5-6.

After commencing Boyer's first jury trial in this matter on September 18, 2023, the trial court declared a mistrial "for reasons of manifest necessity." *See* Order, 4/26/24, at n.1. The court stated that during his first trial, Boyer gave "unresponsive testimony with patently inadmissible and prejudicial assertions regarding the complainant." *Id.* The Commonwealth objected to Boyer's testimony, and the trial court sustained the objection. After considering less drastic alternatives, the court concluded that reasons of "manifest necessity warranted a mistrial." *Id.*

- 3 -

The following exchange occurred at Boyer's first trial, during his testimony on direct examination:

Q:    Now, you heard [the victim] say that you and her had a disagreement, argument, [] either on the 19th or 20th [of June, 2022] or perhaps even both.  Did you at some point prior to June 20th have a disagreement or an argument with her?

A:    We've had many disagreements and arguments, yes.

Q:    When did you stop seeing her and having a physical relationship?

A:    Probably March of '22.

Q:    And at that time did you have a disagreement or argument with her?

A:    No.  I just told her how things were going to be.

Q:    And what were they going to be?

A:    **Well, the things we argue about I knew she was running around with Eric Aikey who I knew [] was on Megan's Law and I knew he was a sexual predator. I knew she had been arrested for prostitution and I knew she also made false reports to the police**.

       MR. SASSERMAN [assistant district attorney]:  Objection, Judge.

Q:    Is that what the argument was about?

       THE COURT:  **Hold on.  Hold on.  We're going to strike all the stuff about Mr. Aikey and about these allegations**.

N.T. Jury Trial, 9/18/23, at 155-56 (emphasis added).  At this point, defense counsel requested a sidebar, and the following discussion occurred between the court and counsel:

THE COURT:    Let me start with Mr. Sassaman.  Repeat your objection and your basis.

- 4 -

MR. SASSAMAN: **Well, Aikey is our rebuttal witness**. And so now[,] I don't think it was solicited by the defense[,] but the witness has just announced that [Aikey is] on Megan's Law and now I'm about to call him as a witness right after. I'm guessing this is your last witness. I'm about to call Aikey as a witness on rebuttal. I'm not sure what the [c]ourt can do about that other than—

THE COURT: Well, I can strike it as not responsive and not relevant and instruct the jury to disregard it[,] is what my plan would be, but I'll listen to your response first.

MR. SASSAMAN: One other thing. And then the other statement is that [the victim] has a conviction for or was charged with prostitution and false reports. Those are not admissible.

THE COURT: They're not.

MR. SASSAMAN: Defense knows that. Again, I don't think it was solicited. But[,] I mean[,] her credibility is a major issue in this case. Probably the most important issue. And telling the jury to disregard it is not great. That's my objection.

THE COURT: What other remedies would you pose?

MR. SAMUELSON: I mean it's completely improper going against Aikey that way, and it's completely improper. Rape shield.

THE COURT: Oh, no. **It's unquestionably being stricken. The question is whether the instruction to the jury to strike it from the record and instruct them to disregard those comments[,] is that sufficient to preserve the fairness of the trial[?]**

MR. LEPLEY : Your Honor, if I can make an offer. [The victim] testified that they argued and fought. I certainly have a right to say that they didn't argue and fight that day. They did have an argument and a fight and she talked about [how] he brought up her past and that's what they argued about.

THE COURT: Sure.

MA. LEPLEY: How can I not be allowed to explain what the argument and fight and disagreement was about?

THE COURT: Because it's not relevant. They could be arguing about who they voted for president. They could be arguing

whether they like Bud Light versus Keystone Light. It doesn't matter. Because then we have a trial within a trial about what they're arguing about. I don't think there's any dispute there [were] arguments and to a certain extent we got vague descriptions about what it was. I'm not sure it's relevant to go any further than that.

* * *

But right now I have improper statements that [are] unresponsive and prejudicial. And unless you can tell me another basis for its admission, I'm ruling that it's not relevant and I'm striking it. I'm of a mind—**I'm not sure whether that's a sufficient remedy to be honest. Your witness has prejudiced the jury with unsavory, even if true, irrelevant assertions[,] which now we can spend a lot of time figuring out whether it's true or not, but it goes to attack the character of both the complainant as well as the rebuttal witness**. . . . **[M]y question right now is why is this not a mistrial because he decided to volunteer a bunch of stuff that's not relevant** and we spent about 10 minutes talking about it and we can talk about it some more. I don't see the relevance. **I see it as unduly prejudicial and smearing the victim as well as the rebuttal witness**. . . . **I need a remedy for this, and I'm not comfortable yet that telling the jury to disregard what he just said is a sufficient remedy to keep an equal playing field**.

*Id.* at 156-58, 161-62, 167 (emphasis added). The court continued:

Let me turn to the Commonwealth then in terms of shaping the remedial actions here. What is the Commonwealth's suggestion for a remedy for what I am [finding] to be [a] violation of Rule 609 and making a finding under Rule 403 that any probative value regarding references to Mr. Aikey's alleged—and I to this moment have no idea whether it's true or not because I don't find that relevant—allegations that he's on Megan's Law or allegations regarding prostitution that is out under Rule 403. The false reports is out under [Rule] 609. **To you, Mr. Sassaman. What is the Commonwealth's recommendation for curing those violations?**

MR. SASSAMAN: A mistrial, Judge.

- 6 -

THE COURT: Any response?

MR. MARCELLO: [] The proper way to resolve a matter of a [Rule] 403 balancing test[,] which is how this matter is being resolved[,] is to strike the statement, give [a] curative instruction, and move on[.]

THE COURT: Unfortunately for me, the courts defer to an abuse of discretion standard for the trial judges and **what I find here is not a single violation but a wholes[]ale attempt by your client to smear the Commonwealth's witnesses. And I'll note it was completely nonresponsive to the question.** So[,] to be clear on the record, I do not put any of this on Mr. Lepley's shoulders whatsoever. His question was completely proper. It was the response [that] was improper and not isolated to something that would present as a [Rule] 403 balancing but something that is black and white outside of Rule 609. There's a reason why those are there so we don't have collateral trials about the relevance of crimen falsi convictions if it so exists because, again, with that, it's unnecessary at this point to determine whether those allegations are even true. **And so[,] for those reasons I'm going to grant the Commonwealth's motion for a mistrial. And I don't do it lightly.**

*Id.* at 176-78 (emphasis added).

Thereafter, the Commonwealth requested the court reference Pa.R.Crim.P. 605 in its order; the court agreed, stating in its order that it was declaring a mistrial due to manifest necessity. *Id.* at 181.

Boyer's first two issues are related. We, therefore, will address them together. Boyer argues the trial court erred or abused its discretion in granting the Commonwealth's request for a mistrial or entering a mistrial sua sponte in the first jury trial, and that retrial violated his protections against double jeopardy.

It is within a trial judge's discretion to declare a mistrial sua sponte upon the showing of manifest necessity, and absent an abuse of

that discretion, we will not disturb his or her decision. ***Commonwealth v. Leister***, 712 A.2d 332, 334 (Pa. Super. 1998) (citing ***Commonwealth v. Gains***, [] 556 A.2d 870 ([Pa. Super.] 1989)); [***see also***] Pa.R.Crim.P. [605(b)]. Where there exists manifest necessity for a trial judge to declare a mistrial sua sponte, neither the Fifth Amendment to the United States Constitution, nor Article I, § 10 of the Pennsylvania Constitution will bar retrial. ***Leister***, 712 A.2d at 335 (citing ***Commonwealth ex rel. Walton v. Aytch***, [] 352 A.2d 4 ([Pa.] 1976)).

***Commonwealth v. Kelly***, 797 A.2d 925, 936 (Pa. Super. 2002).

In accordance with the scope of our review, we must take into consideration all the circumstances when passing upon the propriety of a declaration of mistrial by the trial court. The determination by a trial court to declare a mistrial after jeopardy has attached is not one to be lightly undertaken, since the defendant has a substantial interest in having his fate determined by the jury first impaneled. ***Commonwealth v. Stewart***, [] 317 A.2d 616, 619 ([Pa.] 1974), citing ***United States v. Jorn***, 400 U.S. 470 [] (1971). Additionally, failure to consider if there are less drastic alternatives to a mistrial creates doubt about the propriety of the exercise of the trial judge's discretion and is grounds for barring retrial because it indicates that the court failed to properly consider the defendant's significant interest in whether or not to take the case from the jury. ***Commonwealth, ex rel. Walton***[, ***supra***]. Finally, it is well[-]established that any doubt relative to the existence of manifest necessity should be resolved in favor of the defendant. [***Commonwealth v.***]***Bartolomucci***,[] 362 A.2d 234[, 239 (Pa. 1976)].

***Id.*** at 936-37.

In ***Commonwealth v. Diehl***, 615 A.2d 690 (Pa. 1992), the Pennsylvania Supreme Court, when considering whether manifest necessity existed for the trial court's sua sponte declaration of a mistrial, stated:

Since Justice Story's 1824 opinion in ***United States v. Perez***, 22 U.S. (9 Wheat.) 579, 580[,] it has been well settled that the question whether[,] under the Double Jeopardy Clause[,] there can be a new trial after a mistrial has been declared without the defendant's request or consent **depends on whether there is a**

- 8 -

**manifest necessity for the mistrial**, **or the ends of public justice would otherwise be defeated.** [] ***Bartolomucci***, [***supra***], citing ***United States v. Dinitz***, 424 U.S. 600 [] (1976). It is important to note that[,] in determining whether the circumstances surrounding the declaration of a mistrial constitute manifest necessity, we apply the standards established by both Pennsylvania and federal decisions. ***Commonwealth v. Mitchell***, [] 410 A.2d 1232 ([Pa.] 1980).

***Diehl***, ***supra*** at 691 (emphasis added).

Here, Boyer argues that, pursuant to Rule 605(b), the Commonwealth is not permitted to request a mistrial, and the court erred in granting that request. ***See*** Appellant's Brief, at 20. Rule 605(b) states: "When an event prejudicial to the defendant occurs during trial[,] only the defendant may move for a mistrial; the motion shall be made when the event is disclosed. Otherwise, the trial judge may declare a mistrial only for reasons of manifest necessity." Pa.R.Crim.P. 605(b).

In support of his argument, Boyer cites to ***Commonwealth v. Kacko***, 393 A.2d 478 (Pa. Super. 1978). There, Kacko was tried on charges of possession and possession with intent to deliver a controlled substance. A defense witness testified that he visited, retained a key for, and sometimes resided in Kacko's apartment. On cross-examination, when asked whether some of the items in the apartment, namely bags containing a controlled substance, belonged to him, the witness refused to answer on grounds that he did not want to incriminate himself. ***Id.*** at 518. The Commonwealth moved for a mistrial over defense counsel's objection. The trial judge at first denied the Commonwealth's motion. The Commonwealth then told the judge

there would be no double jeopardy if the court declared a mistrial sua sponte. *Id.* The judge, "when pressed by the Commonwealth, reversed his ruling and granted the Commonwealth's motion for a mistrial[.]" *Id.* Following a second trial and conviction, Kacko appealed. We stated that "[a] trial judge may declare a mistrial [s]ua sponte for reasons of manifest necessity, or he may grant a motion by a defendant for a mistrial. Rule 1118 [(now Rule 605)] restricts the trial judge to one or the other action." *Id.* at 519. We held, therefore, that "[i]t was error for the court below **to grant the motion by the attorney for the Commonwealth for a mistrial**." *Id.* (emphasis added). In so holding, we specifically stated that "**the court did not declare the mistrial [s]ua sponte.**" *Id.* at 518 (emphasis added). We find this case distinguishable.

Here, unlike in *Kacko*, the court corrected itself on the record and specified in its order that it was declaring a mistrial sua sponte. Although Boyer claims the procedure used by the court to declare a mistrial was erroneous and suggests that the court's reference to the Commonwealth's motion for a mistrial somehow negates the court's authority to declare one, we find no legal support for his contention.

"[I]t has been well[-]settled that the question whether under the Double Jeopardy Clause there can be a new trial after a mistrial has been declared without the defendant's request or consent depends on [whether] there is a manifest necessity for the mistrial[.]" *Diehl*, *supra* at 691. The record in

this case supports the trial court's determination that reasons of manifest necessity justified a mistrial.

Here, the trial court duly considered the unique facts and procedural posture of the case, determined that there was no way to "unring the bell" with respect to what the jury had heard, stated that curative instructions were futile due to the amount of testimony already admitted, and found that there was no alternative but to declare a mistrial. **See** N.T. Jury Trial, **supra** at 156-58, 161-62, 167. Moreover, in its opinion, the court explained:

> The [c]ourt did state that it was granting "the Commonwealth's motion for a mistrial." N.T. [Jury Trial,] 9/18/24, at 179. However, the record reflects that **the Commonwealth was not making a motion for a mistrial, but responding to the [c]ourt's invitation to make a recommendation as to the appropriate remedy for the Defendant's misconduct**.

Trial Court Opinion, 2/18/25, at 4-5, n.2 (unpaginated) (emphasis added). The court, therefore, corrected its statement on the record.

We agree with the trial court that there was no other adequate method, short of a mistrial, to cure the harm and, therefore, there was clearly "manifest necessity" to declare a mistrial. In sum, the court was obligated to protect and uphold the integrity of the judicial process. We find no error or abuse of discretion. **Kelly**, **supra**.

Where, as here, the record supports the court's finding of manifest necessity to declare a mistrial, "neither the Fifth Amendment to the United States Constitution, nor Article I, § 10 of the Pennsylvania Constitution will bar retrial." **Leister**, **supra** at 335 (citing **Commonwealth ex rel. Walton**,

*supra*). Thus, Boyer's argument that retrial violated his double jeopardy rights is meritless.

In his third and fourth issues on appeal, Boyer challenges the court's evidentiary rulings at the second jury trial. Specifically, Boyer claims the court erred or abused its discretion in denying his pretrial request to present Pa.R.E. 404(b) prior bad act evidence against the victim and against Commonwealth witness Aikey, as well as evidence against the victim pursuant to the exceptions to the Rape Shield Law. *See* 18 Pa.C.S.A. § 3104(b). He also claims the court erred or abused its discretion in denying his request to elicit impeachment testimony from Aikey, on cross-examination, concerning whether he was on probation/parole for a Megan's Law sexual offense at the time of the alleged incident, and whether, on the date and time he testified that he did not have interaction with Boyer, as Boyer had testified he had, he was attending a treatment group for convicted sex offenders as a condition of his probation/parole.

Rulings on admissibility are committed to the trial court's discretion and will only be reversed on appeal where there is an abuse of discretion. *See Commonwealth v. Maconeghy*, 171 A.3d 707, 712 (Pa. 2017).

> An appellate court will not find an abuse of discretion based on a mere error of judgment, but rather [] where the [trial] court has reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias[,] or ill-will. Importantly, an appellate court should not find that a trial court abused its discretion merely because the appellate court disagrees with the trial court's conclusion. Indeed, when reviewing the trial court's

exercise of discretion, it is improper for an appellate court to step into the shoes of the trial judge and review the evidence de novo.

***Commonwealth v. Gill***, 206 A.3d 459, 466-67 (Pa. 2019) (citations, quotation marks, brackets, and ellipsis omitted).

Generally, "[a]ll relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Pa.R.E. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Pa.R.E. 401. However, the trial court "may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403. "The credibility of a witness may be impeached by any evidence relevant to that issue, except as otherwise provided by statute or these rules." Pa.R.E. 607(b). Moreover,

[t]he Confrontation Clause in the Sixth Amendment to the United States Constitution provides that all criminal defendants enjoy the right to confront and cross-examine adverse witnesses. Moreover, the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination.

Although the right of cross-examination is a fundamental right, it is not absolute. The trial court may place reasonable limits on defense counsel's cross-examination of a prosecution witness based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. Generally speaking, the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-

examination that is effective in whatever way, and to whatever extent, the defense might wish.

***Commonwealth v. Rosser***, 135 A.3d 1077, 1087-88 (Pa. Super. 2016) (en banc) (citations, quotations, and footnote omitted).

After our review of the parties' briefs, the record, and the relevant case law, we find no abuse of discretion with respect to the trial court's evidentiary rulings and we rely on the opinion authored by the Honorable Michael Piecuch to dispose of those claims. **See** Trial Court Opinion, **supra** at 6-11 (unpaginated) (finding, inter alia, consent not at issue where Boyer filed notice of alibi; crimen falsi evidence from over 24 years ago was too remote and not admissible; and convictions for sexual offenses that result in Megan's Law registration not admissible for impeachment purposes as crimen falsi).

In his final issue, Boyer claims the evidence was insufficient to support any of his convictions. A challenge to the sufficiency of the Commonwealth's evidence "presents a question of law, for which our standard of review is de novo, and our scope of review is plenary." ***Commonwealth v. Brashear***, 331 A.3d 669, 672 (Pa. Super. 2024). "This Court views the record in the light most favorable to the [Commonwealth], giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." **Id.** "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged[,] and the commission thereof by the accused, beyond a reasonable doubt." **Id.**

It is well-settled that "[i]n order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's Rule 1925(b) statement

must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient." *Commonwealth v. Gibbs*, 981 A.2d 274, 281 (Pa. Super. 2009); *accord: Commonwealth v. Garland*, 63 A.3d 339, 344 (Pa. Super. 2013). "Such specificity is of particular importance in cases where . . . the [a]ppellant was convicted of multiple crimes[,] each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt." *Gibbs*, *supra* at 281 (citation omitted).

Specificity prevents the trial court from having to "act as counsel for [a]ppellant and try to anticipate, guess[,] or predict what [a]ppellant wanted to appeal." *Commonwealth v. Lemon*, 804 A.2d 34, 39 (Pa. Super. 2002). When an appellant fails to identify in his Rule 1925(b) statement the specific elements of the specific crimes he is challenging, his claim is waived. *Gibbs*, *supra* at 281; *Commonwealth v. Bonnett*, 239 A.3d 1096, 1106-07 (Pa. Super. 2020) (finding waiver due to blanket statement in Rule 1925(b) statement that there was "insufficient evidence to sustain a verdict of guilty of each charge in the case"); *Garland*, *supra* at 344 (sufficiency claim waived where appellant's Rule 1925(b) statement "simply provided a generic statement stating '[t]he evidence was legally insufficient to support the convictions'").

Here, the jury convicted Boyer of IDSI, sexual assault, terroristic threats with intent to terrorize another, indecent assault, and simple assault. Boyer was also convicted of the summary offense of harassment. In his Rule 1925(b) statement, however, Boyer does not identify which elements of these

- 15 -

crimes that the Commonwealth allegedly failed to prove. Similarly, in his brief on appeal, Boyer does not specify in his argument which elements he is challenging. **See** Appellant's Brief, at 35-38. His claims, therefore, are waived. **See Gibbs**, **supra** at 281 (concluding appellant waived sufficiency claim where he failed to specify which elements he was challenging in his Rule 1925(b) statement and claim was underdeveloped in his brief).[8]

Accordingly, we find no merit to Boyer's claims on appeal. We, therefore, affirm the judgment of sentence and direct the parties to attach a copy of Judge Piecuch's opinion in the event of further proceedings.

Judgment of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>10/17/2025</u>

---

[8] Even if Boyer's claims were not waived, his arguments focus solely on witness credibility. This challenge is more accurately framed as a weight of the evidence issue. **See Gibbs**, **supra** at 281-82 ("[a]n argument that the finder of fact should have credited one witness' testimony over that of another witness goes to the weight of the evidence, not the sufficiency of the evidence").

FILED

2025 FEB 18 AM 9: 05

PROTHONOTARY
UNION CO. PA

|  |  |  |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE COURT OF COMMON PLEAS |
|  | : | OF THE 17TH JUDICIAL DISTRICT |
|  | : | OF PENNSYLVANIA |
| v. | : | UNION COUNTY BRANCH |
|  | : |  |
| MARK BOYER | : | CP-60-CR- 235-2022 |

**OPINION IN SUPPORT OF ORDER PURSUANT TO Pa.R.A.P. 1925(a)**

**PIECUCH, J. – February 1 8 , 2025**

### I. Procedural History.

The Defendant was charged with committing three sexual offenses, terroristic threats and simple assault involving the complainant, "T.E."[1] Trial initially commenced on September 18, 2024. During the jury trial on September 18, 2024, the Defendant gave unresponsive testimony with patently inadmissible and prejudicial assertions regarding the complainant and another Commonwealth witness. The Commonwealth made a timely objection which the Court sustained. After considering less drastic alternatives to address the Defendant's improper testimony, the Court declared a mistrial based on manifest necessity.

The Defendant filed a motion to dismiss on double jeopardy grounds on April 25, 2024, which the Court denied by Order dated April 26, 2024. On April 29, 2024, the Court denied the Defendant's request for certification to take an interlocutory appeal regarding that Order.

---

[1] The Court will refer to the complainant by her initials, T.E., because she is a victim of sexual assault. She testified at trial and her full name is in the record. E.g., N.O.T. 6/24/2024 at p. 40.

On June 25, 2024, a second jury trial commenced resulting in the Defendant's conviction on all counts. The Defendant was sentenced on December 9, 2024. The Defendant has raised five issues on appeal:

1. Whether the Court abused its discretion and/or committed an error of law in granting the Commonwealth request for a mistrial in the first jury trial on September 18, 2023?

2. Whether the Court violated the Defendant's Double Jeopardy protections under the 5th Amendment to the U.S. Constitution and Article I, § 10 of the Pennsylvania Constitution by subjecting him to a second jury trial on June 24 and 25, 2024?

3. Whether the Court abused its discretion and/or committed an error law in denying the Defendant's pretrial request to present evidence at the second trial regarding two Commonwealth witnesses (T.E. and Eric Aikey) under Pa.R.Crim.P. 404(b)?

4. Whether the Court abused its discretion and/or committed an error law in denying the Defendant's request to impeach a Commonwealth witness (Eric Aikey) with questions regarding a) whether he was on probation/parole for a sexual offense at the time of the crime, and b) whether he was attending a treatment group for convicted sex offenders as a condition of his probation/parole at the time the witness testified he had an interaction with the Defendant?

5. Whether the Commonwealth's evidence was sufficient to sustain the jury's guilty verdicts on all counts at the second trial?

For the reasons set forth below, the Court finds that none of these issues have any merit.

## II. Discussion.

The Court will address each of the Defendant's claims on appeal in turn.

1. Whether the Court abused its discretion and/or committed an error of law in declaring a mistrial in the first jury trial on September 18, 2023?

This claim lacks any merit. During his first jury trial on September 18, 2023, the Defendant chose to testify in his own defense. When defense counsel asked the Defendant about having some sort of disagreement or argument with the complainant, the Defendant responded, "No. I just told her how things were going to be." N.O.T. 9/18/23 at p. 156. Defense counsel asked "And what were they going to be?" Ibid.

The Defendant then responded as follows:

> Well, the things we argue about I knew she was running around with Eric Aikey who I knew he was on Megan's Law and I knew he was a sexual predator. I knew she had been arrested for prostitution and I knew she also made false reports to the police.

Ibid. The Commonwealth immediately objected. Ibid.

The Court then conducted a lengthy sidebar conversation about the objection, about sustaining the objection and the reasons, and about the potential remedies. N.O.T. 9/18/23 at pp. 156-179. During that conversation, the Court expressed concerns that a jury instruction to disregard the Defendant's testimony would be insufficient to counter the Defendant's improper effort to smear the Commonwealth's witnesses in an improper attempt to discredit their testimony before the jury.

> [That testimony] is unquestionably being stricken. The question is whether the instruction to the jury to strike it from the record and instruct them to disregard those comments is that sufficient to preserve the fairness of the trial.

N.O.T. 9/18/23 at p. 158.

In discussing appropriate remedies, it was the Court that first suggested that a mistrial might be necessary:

> [THE COURT:] [M]y question right now is why is this not a mistrial because [the Defendant] decided to volunteer a bunch of stuff that's not relevant ... I don't see the relevance. I see it as unduly prejudicial and smearing the victim [T.E.] as well as the rebuttal witness [Mr. Aikey]. ... I need a remedy for this, and I'm not comfortable yet that telling the jury to disregard what he just said is a sufficient remedy to keep an equal playing field.

N.O.T. 9/18/23 at p. 167.

Defense counsel then commented that the Commonwealth wasn't asking for a mistrial. The Commonwealth responded "I don't know if I can." N.O.T. 9/18/23 at p. 167. After some more discussion and a short recess, the Court ruled on the objection:

> [THE COURT:] So where we left off was an objection to testimony by the Defendant regarding alleged prior convictions involving Mr. Aikey and the complainant. I am sustaining the objection based on relevance as well as a possible violation of Rule 609. The Defendant's testimony regarding the complainant included the statement that the complainant had a conviction for false reports.

N.O.T. 9/18/23 at p. 170.

As conceded by defense counsel, the purported false reports conviction occurred more than ten years ago and written notice was not provided to the Commonwealth before the first trial. Ibid. In addition to relevance, the Court sustained the objection as to the testimony about false reports because the Defendant had not satisfied the notice requirements of Pa.R.Crim.P. 609. N.O.T. 9/18/23 at p. 176. Further, the Court found that the prejudicial effect of the Defendant's testimony outweighed its probative value and that it should also be stricken under Pa.R.Crim.P. 403. N.O.T. 9/18/23 at pp. 176 & 178,

> [W]hat I find here is not a single violation but a whole [sale] attempt by [the Defendant] to smear the Commonwealth's witnesses. And I'll note that it was completely unresponsive to the question [posed by defense counsel].

N.O.T. 9/18/23 at t p. 178.

The Court then turned to the Commonwealth and invited suggestions as to the appropriate remedy now that the Commonwealth's objection had been sustained. At pp. 176-177. The Commonwealth recommended a mistrial.[2] Ibid. After defense counsel had the

---

[2] The Court did state that it was granting "the Commonwealth's motion for a mistrial." N.O.T. 9/18/24 at p. 179. However, the record reflects that the Commonwealth was not making a

opportunity to respond, and after considering less drastic remedies, the Court entered an Order declaring a mistrial based on manifest necessity under Pa.R.Crim.P. 605(B).

> When an event prejudicial to the defendant occurs during trial only the defendant may move for a mistrial; the motion shall be made when the event is disclosed. Otherwise, the trial judge may declare a mistrial only for reasons of manifest necessity.

Here, the first clause of Rule 605(B) does not apply because the event that precipitated the mistrial was not prejudicial to the Defendant. To the contrary, the event that precipitated the mistrial was caused by the Defendant, and seemed designed to help his case by smearing the character of the complainant and Mr. Aikey. The mistrial was declared in accordance with the second clause of Rule 605(B) because the Court found it was required by reasons of manifest necessity. No less drastic measures could have "unrung the bell" of the Defendant's improper testimony before the jury.

2.  Whether the Court violated the Defendant's Double Jeopardy protections under the 5th Amendment to the U.S. Constitution and Article I, § 10 of the Pennsylvania Constitution by subjecting him to a second jury trial on June 24 and 25, 2024?

This claim lacks any merit. "The Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution and Article 1, § 10 of the Pennsylvania Constitution protect a defendant from repeated criminal prosecutions for the same offense." Com. v. Adams, 177 A.3d 359, 371 (Pa. Super. 2017).[3] Generally, the protections of the double jeopardy clause of the state

---

motion for a mistrial, but responding to the Court's invitation to make a recommendation as to the appropriate remedy for the Defendant's misconduct. In the end, it matters not whether the Court declared the mistrial sua sponte, or whether it was done upon the Commonwealth's motion, because the record supports the Court's determination that reasons of manifest necessity justified a mistrial.

[3] There are circumstances where the Double Jeopardy clause of the Pennsylvania Constitution has been construed more broadly than its federal counterpart: where a mistrial was caused by intentional misconduct by the prosecution. Com. v. Smith, 615 A.2d 321, 325 (Pa. 1992). Those circumstances, however, do not exist here: the catalyst for the mistrial here was the Defendant's

constitution's Double Jeopardy Claus are coextensive with those of the U.S. Constitution. <u>Com. v. McCafferty</u>, 758 A.2d 1155, 1160 fn. 8 (Pa. 2000).

Where manifest necessity exists for a trial judge to declare a mistrial, then neither the Fifth Amendment nor Article I, § 10 will bar retrial. <u>Com. v. Walker</u>, 954 A.2d 1249, 1254 (Pa. Super. 2008) (affirming a trial court's declaration of mistrial after consideration of less drastic alternatives which could not "unring the bell" regarding improper testimony).

As discussed above, the Defendant made unsolicited and prejudicial statements during his testimony which precipitated the mistrial. After much discussion with defense counsel and the prosecutor, during which the Court considered less drastic alternatives and decided that they were insufficient as remedies to the Defendant's conduct, the Court found that reasons of manifest necessary required a mistrial. Thus, this claim has no merit.

3.  <u>Whether the Court abused its discretion and/or committed an error law in denying the Defendant's pretrial request to present evidence at the second trial regarding two Commonwealth witnesses (T.E. and Eric Aikey) under Pa.R.Crim.P. 404(b)?</u>

This claim is without merit. After the mistrial in the first trial, the Defendant filed motions in limine on December 28, 2024, requesting to admit certain evidence at his second trial as follows:

a) evidence that the complainant gave a written statement describing sexual acts;
b) evidence that the Defendant "did engage with the Defendant as a self-described prostitute";
c) evidence that the complainant has a history of prostitution;
d) evidence of criminal charges or convictions involving the complainant and prostitution;
e) evidence of any crimen falsi convictions falling outside the 10-year look back period;
f) evidence of any convictions involving property damage by the complaint;

---

own testimony and there is no suggestion that the prosecution engaged in misconduct, intentional or otherwise.

g) evidence that the complainant "has a history of lying to the police in order to have charges filed" against various unnamed individuals; and

h) evidence that a Commonwealth witness (Mr. Aikey) was a sex offender registrant.

The Court conducted a hearing on the motion in limine on April 4, 2024, and denied the motion in its entirely by Order dated April 26, 2024. Each request will be addressed in turn.

a) <u>As to the Defendant' request to present evidence that the complainant gave a written statement describing sexual acts, the Court properly denied this request.</u>

b) <u>As to the Defendant' request to present evidence that the Defendant "did engage with the Defendant as a self-described prostitute," the Court properly denied this request.</u>

c) <u>As to the Defendant' request to present evidence that the complainant has a history of prostitution; the Court properly denied this request.</u>

d) <u>As to the Defendant' request to present evidence of criminal charges or convictions involving the complainant and prostitution, the Court properly denied this request.</u>

The first four requests involved evidence related to the complainant's purported prior sexual acts, including prostitution, and will thus be addressed collectively. This evidence seems proffered mainly to improperly smear the character of the complainant to discredit her testimony.

The Defendant sought to admit evidence related to a written statement describing sexual acts ("I know I got problems but he does it, he brings it, buys it sexual blowjobs anyways") purportedly given by the complainant to the Buffalo Valley Regional Police Department. The full statement was attached to the Commonwealth's filing of January 24, 2024, in opposition to the Defendant's motion in limine.

The Defendant's stated purpose for offering this evidence was to show the context of a sexual relationship with the complainant. The statement does not actually show any context of a sexual relationship with the defendant – it does not identify who Defendant was alleged to have

bought sexual favors from. The Defendant's requests to introduce evidence of the complainant's purported history of prostitution lacks any legal relevance. The Defendant claimed that this evidence would have given context to an argument between the Defendant and complainant. The Court does not find any of this purported context to be relevant. Even it were relevant that they had an argument, the subject matter of the argument is not relevant. Pa.R.E. 401. And even if relevant, any probative value this evidence could offer was outweighed by a danger of unfair prejudice, confusing the issues, or misleading the jury. Pa.R.E. 403.

Moreover, the Defendant's attempt to introduce evidence involving the complainant's purported sexual history, including evidence suggesting a history of prostitution, implicates Pennsylvania's Rape Shield Law. Evidence of specific instances of a victim's past sexual conduct, including prostitution, is not generally admissible under the Rape Shield Act. 18 Pa.C.S. § 3104. See also Com. v. Rogers, 250 A.3d 1209, 1214 (Pa. 2021). The exception is for evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence. Ibid.

First, any evidence of mere charges or allegations of a crime involving prostitution is clearly inadmissible. Second, "a complainant's history of prostitution convictions involving third persons, when offered to prove consent with regard to the defendant, is inadmissible under the Rape Shield Law." Rogers at 1214. Since there was no proffer that the complainant was ever convicted for prostitution involving the Defendant, such convictions would be inadmissible. See ibid. Third, the Defendant did not argue consent; he denied the sexual assault ever happened. N.O.T. 6/24/24 at pp. 197-98, 203. Since the consent of the complainant was not at

issue, any evidence regarding the complainant's purported sexual history was inadmissible under the Rape Shield Law. 18 Pa.C.S. § 3104.

Therefore, such evidence about the complainant's purported history of prostitution was inadmissible under the Rape Shield Law and also based on lack of relevance. Even if relevant, any probative value this evidence offered was outweighed by a danger of unfair prejudice, confusing the issues, or misleading the jury. Pa.R.E. 403.

e) <u>As to the Defendant' request to present evidence of any crimen falsi convictions falling outside the 10-year look back period, the Court properly denied this request.</u>

The Defendant sought to introduce evidence of a conviction against the complainant for a crimen falsi offense (false reports) from 1998. <u>See</u> MJ-12102-CR-382-1998. The Pennsylvania Rules of Evidence permit the admission of crimen falsi offenses for the purpose of impeaching the credibility of the witness. Pa.R.E. 609(a). Generally, convictions outside of a ten-year lookback are not admissible. Pa.R.E. 609(b). The exception is where the probative value of such evidence substantially outweighs its prejudicial effects and written notice is given.[4] Ibid. <u>See also</u> <u>Com. v. Lawrence</u>, 313 A.3d 265, 275 (Pa. Super 2024) (citing <u>Com. v. Randall</u>, 528 A.2d 1326, 1328 (Pa. 1987)).

Any probative value offered by the 1998 false reports conviction was outweighed by its prejudicial effect. No Some twenty-four years passed between that conviction and the events resulting in the Defendant's conviction here. The complainant was eighteen years old at the time of that offense. While the crime of false reports does constitute crimen falsi, that conviction was too remote to reflect on the current veracity of the complainant. It would have a greater propensity to smear the character of the complainant. The complainant's ability to address or

explain it has dissipated with the years. The factual basis for that conviction is unknown to the Court. And while the strength of the Commonwealth's case rested mostly on the complainant's testimony, the Defendant's alibi defense provided alternative means of attacking her credibility. See ibid (outline the Randall factors for a trial court to consider).

f) As to the Defendant' request to present evidence of any convictions involving property damage by the complaint, the Court properly denied this request.

This evidence seems proffered mainly to smear the character of the complainant in an improper attempt to discredit her testimony. The Defendant failed to show how evidence regarding prior incidents where the complainant damaged the Defendant's property would be relevant, and therefore was properly excluded on that basis. Pa.R.E. 401. And even if relevant, any probative value this evidence could offer was outweighed by a danger of unfair prejudice, confusing the issues, or misleading the jury. Pa.R.E. 403.

g) As to the Defendant' request to present evidence that the complainant "has a history of lying to the police in order to have charges filed" against various unnamed individuals; the Court properly denied this request.

While a history of lying to the police could have probative value as to the complainant's veracity, or as to a common scheme or plan to get false charges leveled against someone, the Defendant failed to specify what evidence would be proffered to accomplish such goals. Therefore, the Defendant was unable to proffer how such undefined evidence could be relevant, and it was properly excluded. Pa.R.E. 401.

h) As to the Defendant' request to present evidence that a Commonwealth witness (Mr. Aikey) was a sex offender registrant, the Court properly denied this request.

---

[4] Written notice was provided by the Defendant prior to the second trial by virtue of the motion in limine filed December 28, 2024.

This claim lacks any merit. This evidence seems proffered mainly to smear the character of Mr. Aikey in an improper attempt to discredit his testimony. Convictions for sexual offenses which result in being required to register under Megan's Law is not admissible for impeachment purposes as crimen falsi. See Pa.R.E. 609. The Defendant did not proffer any other legally relevant purpose for introducing evidence that a Commonwealth witness (Mr. Aikey) was a sex offender registrant. Pa.R.E. 401. Even if relevant, any probative value this evidence offered was outweighed by a danger of unfair prejudice, confusing the issues, or misleading the jury. Pa.R.E. 403. See N.O.T. 6/24/24 at pp. 213-220, 231.

4. Whether the Court abused its discretion and/or committed an error law in denying the Defendant's request to impeach a Commonwealth witness (Eric Aikey) with questions regarding:
   a) whether he was on probation/parole for a sex offense at the time of the crime;
   b) whether he was attending a treatment group for convicted sex offenders as a condition of his probation/parole at the time the witness testified he had an interaction with the Defendant?

As discussed above, this claim lacks any merit. This evidence seems proffered mainly to smear the character of Mr. Aikey in an improper attempt to discredit his testimony. Convictions for sexual offenses which result in being required to register under Megan's Law is not admissible for impeachment purposes as crimen falsi. See Pa.R.E. 609. The Defendant did not proffer any other legally relevant purpose for introducing evidence that a Commonwealth witness (Mr. Aikey) was a sex offender registrant, or that he was attending a treatment group for convicted sex offenders. Pa.R.E. 401. Even if relevant, any probative value this evidence offered was outweighed by a danger of unfair prejudice, confusing the issues, or misleading the jury. Pa.R.E. 403. See N.O.T. 6/24/24 at pp. 213-220, 231.

5. Whether the Commonwealth's evidence was sufficient to sustain the jury's guilty verdicts on all counts at the second trial?

After the second trial, the jury returned a guilty verdict on all counts: 1) involuntary deviate sexual assault, 2) sexual assault, 3) terroristic threats, 4) simple assault, and 5) indecent assault. The Court then found the Defendant guilty of count 6, summary harassment. The Commonwealth's evidence was sufficient to prove the Defendant's guilty on all counts.

The complainant testified that on June 20, 2022, she went to the apartment of her ex-boyfriend, the Defendant. She then testified that while there the Defendant punched her, held her down, forcibly engaged in anal intercourse without her consent, and threatened her with a weapon. N.O.T. 6/24/24 at pp. 40-47.

The Commonwealth also presented the testimony of two expert medical professionals (John Devine, MD/Emergency Room Physician, and Lindsey Biddle, RN/Sexual Assault Nurse Examiner) who testified in corroboration of the complainant's disclosure, including documentation/treatment of injuries she suffered during the Defendant's assault on her. N.O.T. 6/24/24 at pp. 101-09, 113-23.

The Defendant testified and denied all the charges. N.O.T. 6/24/24 at pp. 187-207. He also presented an alibi defense, which included calling several witnesses to corroborate his ability defense.

The Commonwealth then called a rebuttal witness, Mr. Aikey, to dispute portions of the Defendant's testimony. N.O.T. 6/24/24 at pp. 221-27.

Having heard the testimony of the complainant and the Defendant and the other witnesses, and having reviewed the exhibits that were admitted into evidence, the jury found the Defendant guilty on all counts. Clearly, the jury made a credibility determination that favored the complainant's testimony, and disfavored the Defendant's denials and his claimed alibi.

Having presided over the trial, this Court has no basis to disturb that credibility determination and the evidence presented was sufficient to justify the Defendant's convictions.

## III. Conclusion.

For the reasons set forth above, the Court finds that the Defendant's issues on appeal have no merit.

By separate Order of Court, the Prothonotary is being directed to forward the record to the Superior Court.

BY THE COURT,

_____
MICHAEL PIECUCH, Judge

PROTHONOTARY-CLERK OF COURTS,
____ COUNTY, __
CERTIFIED FROM THE RECORD ON THIS DATE

cc:    DA's Office
Victim/Witness Coord.
Atty. Hank Clarke
Defendant
Dep. Court Admin.

2 0 FEB 2025

BY: